UNITED STATES, Appellee

v.

Johnathan J. YOUNG, Private, U.S. Marine Corps, Appellant.

No. 94–1224.
CMR No. 93 01734.

U.S. Court of Appeals for the Armed Forces.

Argued May 31, 1995.

Decided Sept. 28, 1995.

For Appellant: *Major Richard K. Stutzel,* USMC (argued); *Lieutenant Alan D. Titus,* JAGC, USNR (on brief).

For Appellee: *Lieutenant R.W. Sardegna,* JAGC, USNR (argued); *Colonel J. Composto,* USMC, and *Commander S.A. Stallings,* JAGC, USN (on brief); *Commander D.H. Myers,* JAGC, USN, and *Lieutenant D.K. Herlihy,* JAGC, USN.

*Opinion of the Court*

COX, Judge:

1. Appellant was tried by a special court-martial, military judge sitting alone. Pursuant to his pleas, he was found guilty of striking a superior commissioned officer; striking a superior non-commissioned officer; violating a general order by driving on a suspended license; resisting apprehension; and making a false official statement, in violation of Articles 90, 91, 92, 95, and 107, Uniform Code of Military Justice, 10 USC

§§ 890, 891, 892, 895, and 907, respectively. He was sentenced to a bad-conduct discharge, confinement for 6 months, and partial forfeitures. The convening authority approved only so much of the sentence as provided for a bad-conduct discharge, confinement for 60 days, and partial forfeitures. The Court of Military Review[1] affirmed.

2. We granted the following issue for review:

WHETHER APPELLANT WAS MENTALLY RESPONSIBLE FOR ASSAULTING LTCOL HOKE AND MGYSGT JOHNSON AND RESISTING APPREHENSION WHEN HE HAS SUBSEQUENTLY BEEN DIAGNOSED AS SUFFERING FROM POST–TRAUMATIC STRESS DISORDER.

3. This is not a petition for new trial based upon newly discovered evidence. Art. 73, UCMJ, 10 USC § 873. Rather, appellant directly attacks his conviction by raising an issue of mental responsibility for the first time on appeal. He asks us to remand this case for a determination of his mental responsibility at the time of the alleged offense, *citing* RCM 706, Manual for Courts–Martial, United States, 1984, and *United States v. Massey*, 27 MJ 371 (CMA 1989), as authority.

4. Historically, we have given preferential treatment to the question of mental responsibility of a military member, even though the matter was not litigated at trial. *United States v. Van Tassel*, 38 MJ 91 (CMA 1993); *United States v. Lilly*, 25 MJ 403, 406 (CMA 1988). Our standard of review for cases in which an appellant seeks a new trial on "newly discovered evidence" of lack of mental responsibility is whether "the appellate court [is] convinced beyond a reasonable doubt that a different result would not obtain if the trier of fact had this new evidence before it. If it is not so convinced, the accused is entitled to present his evidence before a court-martial." *United States v. Dock*, 28 MJ 117, 120 (CMA 1989); *see also United States v. Cosner*, 35 MJ 278 (CMA 1992), *cert. denied*, — U.S. —, 114 S.Ct. 918, 127 L.Ed.2d 206 (1994). On the other hand, if appellant is asking this Court to order a competency hearing pursuant to RCM 706, we would normally ask the appropriate Court of Criminal Appeals to resolve that question. RCM 1203(c)(5). But in neither case is an appellant entitled to any relief unless he or she first makes a showing that there is something that brings into question either his or her competence or lack of mental responsibility.

## FACTS

5. On the date alleged, appellant entered the Marine Corps Exchange (MCX) wearing bib overalls without a shirt. Master Gunnery Sergeant (MGYSGT) Johnson, a military policeman, advised him of the dress code. Appellant identified himself as a civilian, left the exchange, put on a shirt, and returned to the exchange to go to the Western Union Office. Again he was approached by MGYSGT Johnson and also by Lieutenant Colonel (LTC) Hoke, another military policeman. MGYSGT Johnson advised appellant he was to be taken to the brig for initially denying his military status. When asked to assume a leaning, spread-eagle position in order to be searched prior to going to the brig, appellant became irate. A fight broke out; appellant struck LTC Hoke and MGYSGT Johnson, and attempted to flee the scene. He was eventually subdued by several Marines in the area.

6. At trial, appellant readily admitted his guilt of the offenses. On appeal, he now claims that he has been diagnosed as suffering from Post–Traumatic Stress Disorder (PTSD) by Dr. Lewis Patrie, a staff psychiatrist at the Blue Ridge Center for Mental Health, Mental Retardation, and Substance Abuse Services, Asheville, North Carolina. Appellant has submitted a letter from Dr. Lewis Patrie dated September 14, 1994, to support his claim, wherein the doctor describes appellant's *current* symptoms as including "dissociative episodes, confusion, difficulty with concentration and memory, fatigue, restricted affect, paranoia, auditory hallucinations, impulsive behavior with little

---

1. *See* 41 MJ 213, 229 n. * (1994).

or no concern for consequences and angry outbursts with mild provocation." The doctor also states, "Our working diagnosis, at present, is post traumatic stress disorder related to childhood events and apparently exacerbated by his Marine Corps experience."

7. Appellant has also submitted a letter from Dr. David Cook dated February 3, 1995, in which Dr. Cook opines, "At present, our working diagnosis is Schizoaffective Disorder." (Attachment to Final Brief.) There is no indication in the letter that appellant is currently not competent to participate in his defense or any opinion that suggests appellant lacked mental responsibility at the time of the incident.

8. Appellant argues that his

assault on LtCol Hoke and MGySgt Johnson and his resisting apprehension *may* very well have resulted from his mental disease rather than from a conscious and voluntary decision on his part. The appellant's actions in July 1992 were very similar to his current symptom of angry outbursts based upon mild provocation. It is extremely *likely* that the appellant suffered from Post–Traumatic Stress Disorder at the time these offenses occurred and at the time of his court-martial without the realization of the significance of his mental suffering.

Supplement to Petition for Grant of Review at 5 (emphasis added).

9. Government counsel counters by positing that

PTSD is not a condition which in and of itself could lead to a finding that appellant, "as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his [...] acts." *DSM–IV* 309.81[2]; RCM 916(k)(1). PTSD is a mental affliction featuring a number of symptoms that result from an individual's exposure to an extreme traumatic stressor. *DSM–IV* 309.81. It would not be the disorder itself, but rather the episodic symptoms of the

disorder that would interfere with the ability to appreciate the wrongfulness of one's acts, but few of the most common symptoms of PTSD could ever lead to a finding of lack of mental responsibility at a court-martial; avoidance of the traumatic stimulus, irritability, insomnia, and nightmares are the most common symptoms. *Id.* Outbreaks of anger are one symptom of PTSD according to the *DSM–IV,* but that sort of symptom obviously would relate to an issue of volition, not the question of cognition which is now dispositive. The volitional prong of the test was removed with the 1986 amendment to UCMJ, Article 50a, at the same time that the burden was clearly assigned to the accused who raises the defense.

Answer to Supplement to Petition for Grant of Review at 3–4.

## DISCUSSION

■ 10. The question we must decide is whether appellant has carried his burden of persuasion to open the door for further inquiry into mental responsibility. *See United States v. Cosner, supra* at 280. We conclude that he has not.

11. First of all, we accept for this purpose the diagnoses of Dr. Patrie and Dr. Cook that appellant is now suffering from a mental disorder. Our inquiry, however, is whether there is evidence of a lack of mental responsibility at the time appellant committed the charged offenses. This defense is defined in RCM 916(k)(1), as follows:

(1) *Lack of mental responsibility.* It is an affirmative defense to any offense that, at the time of the commission of the acts constituting the offense, the accused, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his or her acts. Mental disease or defect does not otherwise constitute a defense.

12. We find nothing in the record to support this defense. Quite the contrary, the

---

**2.** DSM–IV is the short title for the *Diagnostic and Statistical Manual of Mental Disorders* (Fourth Edition).

record shows that appellant was in complete control of his mental faculties on the date in question. His responses to the guilty-plea inquiry demonstrate complete recollection of the events of the day in question, and he candidly admits the wrongfulness of his conduct. *See United States v. Berri,* 33 MJ 337 (CMA 1991).

13. The record also reflects that his conduct on the date in question showed calm, rational behavior at all times leading up to the event. When confronted about his attire, he lied about his identification. He responded, however, by complying with the rules and put on his shirt. He surrendered his identification card to MGYSGT Johnson without incident. It is true that he resisted arrest and struck LTC Hoke and MGYSGT Johnson in his effort to flee, but that in and of itself does not demonstrate any lack of mental responsibility. Indeed, it merely confirms what the record clearly demonstrates: that this Marine was not a law-abiding Marine. He had little to lose from this new episode of misconduct. He had previously been sentenced to a bad-conduct discharge for stealing a video camera from the MCX and was to depart the next day on appellate leave.

14. We are also convinced that further proceedings would not result in a more favorable sentence for appellant. At the time of this court-martial, he had already received a sentence for other offenses under the Uniform Code of Military Justice, and, as noted earlier, he had received a bad-conduct discharge. These offenses were referred to a special court-martial, and appellant received substantial clemency from the convening authority. Based upon the entire record, appellant has not persuaded us to remand his case for further proceedings.

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Judges CRAWFORD, GIERKE, and WISS concur.

SULLIVAN, Chief Judge (dissenting):

15. For the first time on direct appeal, appellant has made a claim of lack of mental responsibility at the time of his offenses, and he, on the basis of post-trial materials, has requested a sanity hearing to determine this question. This Court, referencing the tests of *United States v. Dock,* 28 MJ 117 (CMA 1989), and *United States v. Cosner,* 35 MJ 278 (CMA 1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 918, 127 L.Ed.2d 206 (1994), has rejected his request for a remand for a sanity board hearing. In *Dock* and *Cosner,* however, we reviewed the decision of the Court of Military Review for abuse of discretion in considering such post-trial materials.

16. The majority opinion, in my view, suggests that this Court might decide this unique sanity-hearing question in the first instance. Despite admittedly broad language in *United States v. Massey,* 27 MJ 371 (CMA 1989) (involving review of Court of Military Review's decision ordering sanity hearing), I conclude that this Court should limit itself to reviewing decisions by the Court of Military Review (what is now the Court of Criminal Appeals) on these post-trial insanity claims and requests. After all, RCM 1203(c)(5), Manual for Courts–Martial, United States, 1984, the authority for this unique appellate practice, is part of a Manual rule entitled: **"Review By a Court of Military Review."** *See United States v. Lilly,* 25 MJ 403 (CMA 1988). I would remand this case to the Court of Criminal Appeals for initial consideration of appellant's post-trial claim.