UNITED STATES

v.

Jack F. DUBOSE, 550 77 7500, Lance Corporal (E–3), U.S. Marine Corps.

NMCM 95 00284.

U.S. Navy–Marine Corps Court of Criminal Appeals.

11 Sept. 1996.

LT James P. Benoit, JAGC, USNR, Appellate Defense Counsel.

Capt Daren K. Margolin, USMC, Appellate Government Counsel.

Before KEATING, LUCAS and PAULSON, Appellate Military Judges.

KEATING, Senior Judge:

The appellant was found guilty, contrary to his pleas, of unauthorized absence, violation of a lawful order, and making and possessing an unregistered bomb (Articles 86, 92, and 134, of the Uniform Code of Military Justice,

10 U.S.C. §§ 886, 892, and 934, respectively). He was found not guilty of related assault and attempted murder charges. He was sentenced to 12 months confinement and a bad-conduct discharge. We granted oral argument on the assignments of error having to do with mental responsibility and the denial of a request for an expert witness. We have examined the record of trial, the assignments of error [1] and the briefs and oral argument of the parties, and we have concluded that no errors prejudicial to the substantial rights of the appellant were committed.

The facts in this case are not in dispute. The appellant initially admitted making a destructive device and placing it in his locker with the intention of killing himself. He then left his unit and remained away as an unauthorized absentee. Other servicemembers became concerned, carefully opened the locker, and found and disassembled the device. An explosives expert testified the device was a complex one, consisting of a pipe bomb inside a glass jar filled with flammable liquid. In his opinion, it was ready to go off and, had it exploded, would have injured seriously or killed everyone in the room.

At trial, the appellant raised the affirmative defense of lack of mental responsibility. Defense experts testified that the appellant lacked mental responsibility because of the combined effect of three mental disorders; multiple personality disorder, post traumatic stress disorder, and severe depression. It was the opinion of the lead defense expert that it was not possible for a person who suffered from these disorders, to the extent that the appellant did, to appreciate the nature and wrongfulness of his actions. Record at 319. Government experts testified to the contrary.

On appeal, appellant argues the Government's experts lacked sufficient basis to rebut theirs, one of whom had extensively evaluated the accused. Therefore, appellant argues, the record supports the conclusion the appellant acted as he did because of his severe mental defect and inability to tell right from wrong. The Government argues mental disease or defect does not in itself constitute a defense and the evidence shows the accused knew what he was doing and that it was wrong. Therefore, appellant failed to prove by clear and convincing evidence that he lacked mental responsibility.

Under former law, sanity was presumed; once evidence of lack of mental responsibility was introduced, the Government had the burden of proving beyond a reasonable doubt that the accused did not lack mental responsibility. In 1986, Congress added Article 50a to the Uniform Code of Military Justice, placing the burden on the accused to establish lack of mental responsibility by clear and convincing evidence. *United States v. Lewis,* 34 M.J. 745, 749–50 (N.M.C.M.R.1991); Article 50a(b), Uniform Code of Military Justice, 10 U.S.C. § 8ʋʋʌ(b).

In the past, this Court has also held that the insanity defense cannot be determined in a factual void, solely on the basis of subjective expert opinions. The facts and circumstances surrounding the offense are highly probative evidence of the legitimacy of the defense. This very approach was recently employed by the Court of Appeals for the Armed Forces in resolving an issue of mental responsibility in *United States v. Young,* 43 M.J. 196 (1995).

In *Young,* after accepting the diagnosis of the medical experts as to the appellant's condition at the time of appeal, the Court looked at the record of the appellant's behav-

---

1. I. THE GOVERNMENT FAILED TO PROVE APPELLANT GUILTY OF THE CHARGED OFFENSES BEYOND A REASONABLE DOUBT WHEN THE DEFENSE PROVED THAT THE APPELLANT SUFFERED FROM A SEVERE MENTAL DISEASE WHICH PREVENTED HIM FROM BEING ABLE TO APPRECIATE THE NATURE AND QUALITY OR WRONGFULNESS OF HIS CONDUCT.

II. THE MILITARY JUDGE ERRED WHEN HE DENIED THE APPELLANT'S REQUEST FOR AN EXPERT WITNESS IN THE FIELD OF NEUROLOGY AND PSYCHIATRY.

III. A SENTENCE INCLUDING A BAD-CONDUCT DISCHARGE AND 12 MONTHS CONFINEMENT IS INAPPROPRIATELY SEVERE BECAUSE THE CHARACTER OF APPELLANT'S SERVICE AND THE FACT THAT APPELLANT'S OFFENSES WERE PRECIPITATED BY A MENTAL DEFECT MILITATE AGAINST THE IMPOSITION OF AN UNSUSPENDED BAD–CONDUCT DISCHARGE.

ior at the time of the offense in order to determine whether he knew what he was doing and whether he knew his actions were wrong. The Court decided appellant's conduct on the date in question showed calm, rational behavior at all times leading up to the event and declined to remand the case for a determination of mental responsibility at the time of the alleged offense. *Young,* at 199.

Applying similar reasoning, we hold that in order for this defense to pertain, there must be clear and convincing objective evidence, not merely subjective medical opinion, that the appellant at the time of the offense either did not know what he was doing or did not know what he was doing was wrong. The facts and circumstances of the appellant's behavior at the time of the offenses is highly probative and constitutes the kind of objective evidence we believe is required to prove the accused did not know what he was doing or that what he was doing was wrong.

In other words, in order for an accused to avail himself of the affirmative defense of lack of mental responsibility, he must *first* show by clear and convincing evidence, based upon the facts and circumstances surrounding the offense, that at the time of the offense he either did not understand what he was doing or that he did not understand what he was doing was wrong. He must *then* establish, by clear and convincing evidence, that his lack of understanding was due not to some non-medical cause, such as voluntary alcohol or drug use, but was the result of a severe mental disease or defect.

In this case, the facts and circumstances surrounding the offenses show the appellant to have been a highly capable squad leader who was able to plan and execute a complex criminal scheme. He constructed, and took care to conceal, a deadly destructive device. His behavior at the time was entirely consistent with a rational plan either to kill his squad leader, as the Government alleged, or himself, as he stated. In either case, he clearly knew he was making an illegal destructive device and that his doing so was wrong. Because the requisite lack of understanding was not proven by clear and con-

vincing evidence, we need not determine whether his medical condition qualified as a severe mental disease or defect.

As to the second assignment of error, we agree with the Government that although an accused is entitled to expert assistance, if relevant and necessary to the preparation of his defense, he is not entitled to a particular expert of his choice. *United States v. Burnette,* 29 M.J. 473 (C.M.A.), *cert. denied,* 498 U.S. 821, 111 S.Ct. 70, 112 L.Ed.2d 43 (1990). The defense asked for a particular medical specialist by name. The Government replied that competent expert assistance was available within the Navy medical system.

The military judge then denied the specific request but allowed the lead defense expert witness to testify as to information she obtained from the requested expert as part of her testimony under Military Rule of Evidence 703. Significantly, the defense did not request the assistance of any other neurologist or psychiatrist although such assistance was obviously available. The defense could either accept such assistance or look to its own resources. *Burnette,* at 476; Mil. R. Evid. 706(c). We conclude that the military judge did not err in refusing to provide the specified expert assistance.

Finally, we specifically find that a bad-conduct discharge and 12 months confinement entirely appropriate for a Marine who manufactured and concealed a bomb and then commenced an unauthorized absence so as to endanger the lives of all the Marines who lived in his squad bay.

Accordingly, the findings of guilty and the sentence as approved on review below are affirmed.

Judge LUCAS and Judge PAULSON concur.