**UNITED STATES**

v.

**Carlos M. JONES, 261–51–7544, Lieutenant (O–3), U.S. Naval Reserve.**

**NMCM 94 00485.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 17 Sept. 1993.

Decided 30 Jan. 1997.

LCDR Eric C. Price, JAGC, USN, Appellate Defense Counsel.

LT Kent Tester, JAGC, USNR, Appellate Defense Counsel.

MAJ Laura L. Scudder, USMC, Appellate Government Counsel.

MAJ Stephen P. Finn, USMC, Appellate Government Counsel.

Before DOMBROSKI, C.J., KEATING, Senior Judge, and LUCAS, J.

KEATING, Senior Judge:

Contrary to his pleas, appellant was found guilty by a general court-martial of officer members of 7 specifications of unauthorized absence in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886 (1994)[hereinafter UCMJ]; 6 specifications of

wrongfully obtaining check cashing services, and 39 specifications of cashing checks with insufficient funds, all in violation of Article 134, UCMJ, 10 U.S.C. § 934; and 1 specification of wrongfully using cocaine in violation of Article 112a, UCMJ, 10 U.S.C. § 912a. He was sentenced to confinement for 12 months, total forfeitures and dismissal from the naval service.

We heard oral argument on the assignments of error having to do with mental responsibility, effective assistance of counsel, and the use of service record documents to prove unauthorized absence in the case of an officer. Having examined the record of trial, the assignments of error,[1] and the briefs and arguments of counsel, we conclude that no error materially prejudicial to the substantial rights of the appellant was committed, and, except as discussed below with respect to Specifications 5 and 6 of Charge I, we affirm the findings and sentence.

This was a lengthy and vigorously contested trial in which the central issue was the accused's mental responsibility. The Government called 17 witnesses and introduced numerous documents on the merits. The defense case consisted primarily of the testimony of a civilian psychiatrist as to the appellant's lack of mental responsibility, as well as evidence of the appellant's good military character. The Government called a Navy psychiatrist who testified in rebuttal that although the appellant did have a severe mental disease, there was no relationship between his disease and the criminal acts he allegedly committed because he knew what he was doing when he committed them.

The defense expert diagnosed the appellant as having a "bipolar disorder" and felt that he was unable to appreciate the nature and quality of his acts because he was paranoid, suspicious of others and unable to make decisions appropriately. He testified that "their judgment is really the thing that's probably most in question with these people." Record at 424. On cross-examination, this expert admitted that he did not know if all of the appellant's criminal behavior resulted from his disorder but that some of it did. No other evidence was introduced by the defense to attempt to prove that at the time the appellant committed any one of the 53 different offenses of which he was convicted that he either did not understand what he was doing or that he did not understand that what he was doing was wrong.

The government expert disagreed with the diagnosis of bipolar disorder. He diagnosed appellant as having a "depressive disorder not otherwise specified" because of the similarity of appellant's symptoms to those of

---

1. I. APPELLANT LACKED THE REQUISITE MENTAL RESPONSIBILITY TO COMMIT THE CHARGED OFFENSES.

II. APPELLANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL WHEN TRIAL DEFENSE COUNSEL (1) FAILED TO MOVE TO ADMIT THE REPORT PREPARED PURSUANT TO R.C.M. 706, WHERE THAT REPORT WAS OF CENTRAL IMPORTANCE TO THE AFFIRMATIVE DEFENSE OF LACK OF MENTAL RESPONSIBILITY; (2) FAILED TO RAISE ISSUE OF ILLEGAL PRETRIAL CONFINEMENT WHERE APPELLANT A COMMISSIONED OFFICER WAS ORDERED INTO PRETRIAL CONFINEMENT ON TWO SEPARATE OCCASIONS BY AN OFFICER OTHER THAN HIS COMMANDING OFFICER.

III. THE GOVERNMENT FAILED TO PROVE APPELLANT ABSENTED HIMSELF FROM HIS UNIT BEYOND A REASONABLE DOUBT IN SPECIFICATIONS TWO, THREE, FOUR, FIVE, AND SIX OF CHARGE I.

IV. A SENTENCE INCLUDING TWELVE MONTHS CONFINEMENT AND A DISMISSAL IS INAPPROPRIATELY SEVERE IN LIGHT OF APPELLANT'S SEVERE MENTAL DISEASE OR DEFECT, AND APPELLANT'S PRIOR SERVICE. (Citations omitted.)

V. THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY FAILING TO INSTRUCT THE MEMBERS ON THEIR RIGHT TO RECOMMEND CLEMENCY, WHERE THE SENIOR MEMBER INQUIRED AS TO WHETHER DISMISSAL WAS THE ONLY ALTERNATIVE TO SEPARATION THE MEMBERS MAY CONSIDER. (Citations omitted.)

VI. THE STAFF JUDGE ADVOCATE'S RECOMMENDATION INCORRECTLY CHARACTERIZED APPELLANT'S SERVICE AS "UNSATISFACTORY." (Citations omitted.)

VII. THE MILITARY JUDGE COMMITTED PLAIN ERROR WHEN HE FAILED TO PROVIDE A COPY OF THE REPORT PREPARED PURSUANT TO R.C.M. 706 WHEN A MEMBER OF THE COURT–MARTIAL INDICATED: "IT SEEMS LIKE A PERTINENT PIECE OF INFORMATION, AND I'M NOT SURE WHY IT WAS ELIMINATED FROM OUR PACKAGE. EVIDENCE REQUESTED BY COURT MARTIAL MEMBER." (Citations omitted.)

continued cocaine intoxication. He also testified that it would be very unusual for a bipolar disorder to only surface at the time an individual was committing a criminal offense. It would also be unusual if no one was aware that the individual was ill. He acknowledged that appellant had clearly been paranoid and psychotic at the time he was apprehended, and probably delusional, but concluded that there was no relationship between appellant's illness and the crimes he allegedly committed because he knew what he was doing at the time each crime occurred. The military standard, the government expert testified, is not a question of what one feels or is able to do, but what one knows. Record at 475–76.

The Government also introduced evidence to prove beyond a reasonable doubt each element of the 53 offenses of which the appellant was convicted. The mental elements of these offenses include knowledge, knowledge and intent, and dishonorable failure to maintain funds. MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.), Part IV, ¶¶ 37(c)(5), 78(b)(3), 68(b)(4)[hereinafter MCM]. The latter element requires "deceit, evasion, false promises, or other distinctly culpable circumstances indicating a deliberate nonpayment or grossly indifferent attitude toward one's just obligations." MCM, Part IV, ¶ 71(c). The testimony of appellant's civilian supervisor as to the unauthorized absence offenses also proved that he knew the identity of his unit, that he was required to be there, and that his absence from it at various times was without authority.

### The Law

Under the law in the military prior to 1986, sanity was presumed. Once some evidence of lack of mental responsibility was introduced, the Government had the burden of proving beyond a reasonable doubt that the accused did not lack mental responsibility. JOE H. MUNSTER, JR. AND MURL A. LARKIN, MILITARY EVIDENCE § 3.3 at 47 (2nd ed. 1959). In 1986, Congress added Article 50a to the Uniform Code of Military Justice, placing the burden on the accused to establish lack of mental responsibility by clear and convincing evidence. *United States v. Lewis,*

34 M.J. 745, 749–50 (N.M.C.M.R.1991); Art. 50a(b), UCMJ, 10 U.S.C. § 850a(b).

In the past, this court has held that the insanity defense cannot be determined in a factual void, solely on the basis of subjective expert opinion. The facts and circumstances surrounding the offense are highly probative evidence of the legitimacy of the defense. *United States v. Dubose,* 44 M.J. 782, 783 (N.M.Ct.Crim.App.1996). This approach was recently employed by the Court of Appeals for the Armed Forces in resolving an issue of mental responsibility in *United States v. Young,* 43 M.J. 196 (1995).

In *Young,* after accepting the diagnosis of the medical experts as to the appellant's condition at the time of appeal, the court looked at the record of the appellant's behavior at the time of the offense in order to determine whether he knew what he was doing and whether he knew that his actions were wrong. The Court of Appeals for the Armed Forces decided that appellant's conduct on the date in question showed calm, rational behavior at all times leading up to the event, and declined to remand the case for a determination of mental responsibility at the time of the alleged offense. *Young,* 43 M.J. at 199.

Applying similar reasoning, we recently held that in order for this defense to apply, there must be clear and convincing objective evidence, not merely subjective medical opinion, that the appellant at the time of the offense either did not know what he was doing or did not know that what he was doing was wrong. *Dubose,* 44 M.J. at 784. We further held that the appellant must also establish by clear and convincing evidence that this lack of understanding was due not to some nonmedical cause, but was the result of a severe mental disease or defect. *Id.*

Moreover, military law no longer considers impaired judgment or ability to adhere to the right to excuse criminal conduct. Article 50a, UCMJ, 10 U.S.C. § 850a, like the Insanity Defense Reform Act, 18 U.S.C. § 17(a), eliminated the "irresistible impulse" test, also called the "control" or "volitional" test. *Lewis,* 34 M.J. at 749. "Evidence relating to any mental impairment

or deficiency of the accused," not amounting to a lack of mental responsibility, may, however, be considered by the court-martial during the presentencing proceedings. RULE FOR COURTS-MARTIAL 1001(f), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.)[hereinafter R.C.M.].

## The Facts

In this case, the parties agreed, and introduced extensive evidence to prove, that the appellant had a severe mental disease. Additionally, the Government, in the course of proving its case, introduced extensive evidence that the appellant did or failed to do certain acts and that he did them with the requisite knowledge, intent or, in the case of the check offenses, deliberate failure or grossly indifferent attitude, that made those acts criminal.

■ The defense introduced no factual evidence to prove that the accused did not know what he was doing or that what he was doing was wrong. The defense relied entirely on the opinion of its expert witness that the accused must not have known what he was doing, at least at the times he committed some of the offenses, because his judgment was impaired by his bipolar disorder. Congress has prohibited the use of such expert testimony in the trial of criminal cases in the United States district courts. FED. R. EVID. 704(b).[2] Testimony in the form of expert opinion as to the ultimate issue of the accused's mental state at the time of the offense is permitted in courts-martial because of the reduced risk that military court members will be unduly influenced. STEPHEN A. SALTZBURG, ET AL., MILITARY RULES OF EVIDENCE MANUAL 747 (3rd ed. 1991).

## Analysis

■ A diagnosis of severe mental disease or defect, although undoubtedly a serious matter, does not translate directly into the affirmative defense of lack of mental responsibility. "Proof of [mental illness] in the air, so to speak, will not do." *United States v. Allen*, 33 M.J. 209, 212 (C.M.A. 1991), *cert. denied*, 503 U.S. 936, 112 S.Ct. 1473, 117 L.Ed.2d 617 (1992).[3] We will not presume a lack of mental responsibility simply by the proximity of events to a diagnosis of severe mental disease or defect, absent some connection between the accused's behavior as it relates to his mental condition and a specific offense. *Id.* We conclude that the appellant did not lack the requisite mental responsibility to have committed the charged offenses.

We previously denied appellant's motion for a psychiatric evaluation and stay of these proceedings because no substantial question was raised as to the requisite mental capacity of the accused by the documents submitted by the appellant. Although we found evidence in the form of expert medical opinion that the appellant had, and may still have, a mental condition that requires medical treatment, we found insufficient factual evidence of his present inability to consult with his defense attorney and to rationally and factually understand the appellate proceedings then pending. *See United States v. Martinez*, 12 M.J. 801, 808 (N.M.C.M.R.), *petition denied*, 13 M.J. 232 (C.M.A.1981)(citing *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)).

■ We hold that, like the insanity defense itself, mental capacity to understand and conduct or cooperate intelligently in the appellate proceedings cannot be determined in a factual void, solely on the basis of subjective expert opinion. *See Dubose*, 44 M.J. at 783. Substantial evidence to the contrary, *see* R.C.M. 1203(c)(5), means more than a diagnosis of mental illness, however severe. There must be objective evidence that directly raises a question about the appellant's

---

2. The purpose, according to the report of the Senate Committee on the judiciary, was to return to the fact finder the task of determining the ultimate issue of the accused's mental state at the time of the offense. STEPHEN A. SALTZBURG, ET AL., MILITARY RULES OF EVIDENCE MANUAL 744 (3rd ed. 1991).

3. *Allen* dealt specifically with the issue of command influence. We believe its requirement that a nexus exist between abstract events giving the appearance of command influence and allegations of such command influence in a particular trial can be applied by analogy in the mental responsibility context.

actual present ability to consult with his attorney and to rationally and factually understand the nature of the proceedings against him. *Martinez*, 12 M.J. at 808. No such evidence is present in this case.

### Proof of Unauthorized Absence

 We agree with appellant that the Government's evidence is insufficient to prove that he was absent without authority as alleged in Specifications 5 and 6 under Charge I. Specifications 2, 3, and 4 were proven by live testimony of responsible persons who had personal knowledge of the appellant's failure to report at various times. Specifications 5 and 6, however, were purportedly proven by enlisted service record documents known as "page 6's," or more formally, as NAVPERS 1070/606's. Since the applicable regulation specifically prohibits the use of this form for officers, the form was not admissible as a public or official record.

These page 6 entries also do not qualify as records of a regularly conducted activity, or as business records, because of their lack of timely recording in accordance with a regular practice. MIL. R. EVID. 803(6), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.). These records were prepared at the request of the staff judge advocate's office for no reason other than to serve as evidence. They, therefore, lack the indicia of reliability that would make them admissible as an exception to the hearsay rule. In any event, we find them factually insufficient to support the findings of guilty to Specifications 5 and 6 of Charge I beyond a reasonable doubt. Accordingly, we will set those findings aside.

### Decision

We have considered the remaining assignments of error and the Government's response thereto, and conclude that they are without merit. The findings of guilty to Specifications 5 and 6 of Charge I are set aside and those Specifications are dismissed. The remaining findings of guilty and the sentence, as approved below and reassessed by us in accordance with *United States v.*

*Jones*, 39 M.J. 315 (C.M.A.1994), are affirmed.

Chief Judge DOMBROSKI and Judge LUCAS concur.