**UNITED STATES,**

v.

**Penny A. SCHLARB, 367 52 7205**
**Gunnery Sergeant (E–7),**
**U.S. Marine Corps.**

**No. NMCM 95 00848.**

U.S. Navy–Marine Corps
Court of Criminal Appeals.

Sentence Adjudged 10 Sept. 1993.

Decided 1 April 1997.

Dan R. Hyatt, Civilian Defense Counsel.

LT Leslie K. Burnett, JAGC, USNR, Appellate Defense Counsel.

Maj Stephen P. Finn, USMC, Appellate Government Counsel.

Before McLAUGHLIN, SEFTON and WYNNE, Appellate Military Judges.

SEFTON, Judge:

The appellant was tried by a special court-martial composed of members on 27 July, 9 and 27 August, and 7–10 September 1993, and convicted of two specifications of the wrongful use of methamphetamine and two specifications of unauthorized absence totaling three days. Arts. 86 and 112a, Uniform Code of Military Justice, 10 U.S.C. §§ 886

and 912a (1994)[hereinafter UCMJ]. She was sentenced to six months of confinement with hard labor, a bad-conduct discharge, forfeitures of $542.00 per month for 6 months, and reduction in grade to E–1. On 24 April 1995, the convening authority approved the sentence as adjudged, and, except for the bad-conduct discharge, ordered it executed. The convening authority disapproved execution of that portion of the sentence adjudging confinement after 15 October 1993.[1] The appellant assigns six errors,[2] we address them in turn below:

### Post-Trial, Pre–Convening Authority Action Delay

█ In her first assignment of error, the appellant contends that the delay between her trial, finishing on 10 September 1993 and the convening authority's action on 24 April 1995 mandates corrective action. We agree that this inordinate period of delay is unacceptable, and caution those charged with the convening and review of courts-martial to redouble their efforts in ensuring that each case is handled with dispatch.[3] We do not, however, find that the delay in this case constitutes an "unjustified and inordinate delay in the review of the record resulting in demonstrable prejudice such as to require reversal of the conviction." *United States v.*

---

1. This was the date of the appellant's release from post-trial confinement in accordance with her request for voluntary appellate leave.

2. I. APPELLANT HAS BEEN PREJUDICED BY UNREASONABLE POST TRIAL DELAY BETWEEN COMPLETION OF HER COURT–MARTIAL AND THE CONVENING AUTHORITY ACTION.

II. THE FINDINGS AND SENTENCE OF APPELLANT'S COURT–MARTIAL SHOULD BE SET ASIDE BECAUSE SHE WAS NOT COMPETENT TO ASSIST IN HER OWN DEFENSE.

III. THE FINDINGS AND SENTENCE OF APPELLANT'S COURT–MARTIAL SHOULD BE SET ASIDE BECAUSE APPELLANT'S TRIAL WAS TAINTED BY UNLAWFUL COMMAND INFLUENCE.

IV. THE FINDINGS AND SENTENCE OF APPELLANT'S COURT MARTIAL SHOULD BE SET ASIDE BECAUSE THE GOVERNMENT WRONGFULLY WITHHELD EXCULPATORY EVIDENCE FROM APPELLANT.

V. THE EVIDENCE WAS FACTUALLY INSUFFICIENT TO PROVE BEYOND REASONABLE DOUBT THAT APPELLANT KNOWINGLY USED A PROHIBITED SUBSTANCE.

VI. THE EVIDENCE WAS FACTUALLY INSUFFICIENT TO PROVE BEYOND REASONABLE DOUBT THAT APPELLANT'S ABSENCE FROM DUTY ON MARCH 23–25 WAS NOT DUE TO IMPOSSIBILITY.

3. We again reiterate our admonition in *United States v. Henry*, 40 M.J. 722, 725 (N.M.C.M.R. 1994), that despite the lack of a judicially-imposed time deadline for post-trial processing, we strongly encourage all who work such cases not to "adopt or adhere to a lackadaisical attitude in completing convening authorities' actions...." The Court of Criminal Appeals has very recently voiced its continuing displeasure with inordinate post-trial delay in *United States v. Miller*, 45 M.J. 149, 150 n. * (1996). While we readily distinguish the 62–page guilty plea record in *Miller* from the nearly one-thousand page record of this well-defended, not-guilty plea case before members, we are drawn to the Court's language decrying the "increased frequency" of delays. Renewed diligence in this vital facet of military justice practice is the only likely viable alternative to some "back to the future" return to a system of appellate oversight—something neither the practitioner nor the appellate courts desire.

*Dupree,* 37 M.J. 1089, 1090 (N.M.C.M.R.1993)(quoting *United States v. Echols,* 17 M.J. 856, 857 (N.M.C.M.R.1984)).

■ We find neither the failure of reasonable diligence required of the Government, nor the prejudice required to be demonstrated by the appellant which must combine to mandate relief exist in this case. Post-trial delay subsequent to action by the convening authority (CA) will not mandate dismissal "absent a showing of bad faith on the part of the Government in the appellate review of [the] case, [and] appellant bears the burden of establishing specific prejudice." *United States v. Dunbar,* 28 M.J. 972, 981 (N.M.C.M.R.1989), *aff'd* 31 M.J. 70 (C.M.A. 1990). Because the inordinate delay in this case occurred before the date of the CA's action, *Dupree* and *Echols* control, not *Dunbar.* *See Dupree,* 37 M.J. at 1092; *United States v. Williamson,* 42 M.J. 613, 619 (N.M.Ct.Crim.App.1995)(McLaughlin, J., concurring) (analyzing the interrelationship between the two aspects of posttrial delay, and concluding, as we do in this instance, that relief is not warranted).

■ The appellant's attempt to bootstrap her request for voluntary appellate leave in return for release from confinement (contrary to the advice of her military counsel) into either "bad faith" on the part of the Government or "specific prejudice" to her is disingenuous. The appellant had the legal right to remain on active duty and receive pay and emoluments until the CA acted on her case. Art. 76a, UCMJ, 10 U.S.C. § 876a. She chose instead to negotiate her release from confinement in exchange for her departure on voluntary appellate leave. That choice—initiated by her through her military counsel, albeit reluctantly—provides no evidence of bad faith by the Government. That the appellant now wishes she had chosen a different course, perhaps for monetary reasons, amounts to an effort to avoid reaping what she sowed. Appellant's Assignment of Errors and Brief at 16, App. A (statement of Major S.A. Folsom) [hereinafter "Appellant's Brief"].

■ The appellant argues before this court that *Dupree* supports her contention of demonstrated prejudice. She is mistaken. Though the Government will be held accountable, where appropriate, for its negligence in the handling of a case under post-trial review, valid convictions will not be set aside on the sole basis of submissions by an appellant which do not sufficiently demonstrate specific prejudice. *Dunbar,* 28 M.J. at 981. We so conclude by considering the fact that the appellant's credibility is subject to challenge not only because of the court-martial convictions, but also because of her inherent self-interest. *Id.* The generalized conclusory statements relied on by the appellant in her brief to this court simply do not support the required specific finding of prejudice. Appellant's Brief at 12–13. Despite the provision by this court in *Dunbar* of a number of possible methodologies for demonstrating prejudice from inordinate post-trial delay (either preceding or following action by the CA), this appellant has not done so, and thus falls short of carrying that burden. *Dunbar,* 28 M.J. at 980 n. 5. Absent what we have earlier called "verified or verifiable prejudice," relief is unavailable. *See United States v. Agosto,* 43 M.J. 853, 854 (N.M.Ct. Crim.App.1996).[4]

### Mental Capacity

The appellant next asserts a lack of mental capacity to stand trial. Appellant's Brief at

---

**4.** We are likewise unpersuaded by appellant's passing reference to having not been on notice of the defects in her submissions. Unlike appellant in *United States v. Thomas,* 41 M.J. 873 (N.M.Ct. Crim.App.1995), who had made some showing of prejudice to him and demanded expeditious review through counsel, it was not until the final defense submission on 12 January 1995 that appellant first claimed that she had been denied speedy review of her case. We specifically find that the now-complained of delays were not addressed in her two earlier requests for additional time to respond to the Staff Judge Advocate's Recommendation (SJAR). *See* Appellant's Brief at 13 n. 1; *Dunbar,* 28 M.J. at 980 n. 5. We note that the teachings of *Dunbar* existed during the entire pendency of these proceedings. Additionally, while we remain fully sympathetic to the need for preparation and sufficient time to explore and brief issues for review, the appellant has requested seven (7) enlargements of time before this court, and has not opposed the six requested enlargements granted the Government in her case (or even stated for the record some objection to more delay in the processing of her case).

17–19. She raises, for the first time, the issue of her ability to understand and appreciate the nature of the proceedings against her or to cooperate intelligently in the defense of her case below. RULE FOR COURTS-MARTIAL 909, MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.) [hereinafter R.C.M.]. The appellant asserts that, while the military judge recognized the issue of mental capacity, he failed to decide the issue as an interlocutory question of fact as it was is duty to do. R.C.M. 909; Appellant's Brief at 18.

■ The appellant testified "lucidly and at length"[5] twice before the military judge, and twice before the members. This testimony convinces us that she had a clear understanding of the nature of the proceedings, the law governing the charges, and her potential defenses, and was able to materially assist in her own defense. Record at 51–57, 259–301, 820–77, and 972–75. While her military trial defense counsel may find some retrospective question of her ability to act in her own best interest, she clearly demonstrated a grasp of her plight and made continuing, conscious attempts at avoiding conviction at trial. Her tardy attack on her capacity to stand trial, when viewed in the light of the trial record itself, does not adequately raise the issue or disturb the waiver of that issue inherent under R.C.M. 905(e).

We find no substantiation of lack of any capacity beyond those matters listed in her brief before this court and in the statements of Major Folsom and Mr. Moore. In contrast, the defense evidence presented at trial clearly supports the appellant's mental capacity and responsibility. In a report by her treating psychiatrist, Doctor Hammer, she was found to "behave in an uncooperative and inappropriate manner despite reassurances that we [were] attempting to assist her," and was "not considered mentally ill,

but manifest[ed] a long-standing disorder of character and behavior...." Defense Exhibit A at 14. She was likewise determined to be responsible for her actions during this same evaluation, a conclusion Doctor Hammer reiterated from the witness stand. Record at 745–46.

■ Additionally, we find no credible evidence to rebut the presumption that the military judge and the trial defense counsels performed their duties faithfully and acted in an informed manner on issues of mental capacity and responsibility. *United States v. Lewis,* 34 M.J. 745, 752 (N.M.C.M.R.1991). In fact, the military judge raised the insanity issue to the appellant's trial defense team at three separate junctures in the proceedings. Record at 59, 105, and 735–36. He also proffered questions from the bench to Doctor Hammer, a staff psychiatrist who testified at trial. Record at 724. On this same basis, we decline to further consider ineffective representation by the appellant's trial defense team. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); *United States v. Scott,* 24 M.J. 186 (C.M.A.1987).

We are convinced that a different result on the issue of insanity (specifically mental capacity as raised herein), would not have obtained if the court members had considered this newly proffered evidence. Applying the current standard for post-article 50a, UCMJ, 10 U.S.C. § 850a, cases set in *United States v. Cosner,* 35 M.J. 278, 281 (C.M.A.1992), we are convinced beyond a reasonable doubt that reasonable factfinders would not find by clear and convincing evidence that appellant's diagnosed "major depression" made her either unable to appreciate the quality and nature or the wrongfulness or her acts, or unable to participate in either her trial or post-trial proceedings in a meaningful way.

---

5. *United States v. Briggs,* 42 M.J. 367, 372 (U.S. Armed Forces 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1362, 134 L.Ed.2d 529 (1996), points out the importance of trial testimony as evidence of the competency of an accused, and reaches a conclusion identical to ours in a similar factual situation. Here, as in *Briggs,* trial testimony included the assessment of an attending psychiatrist. An additional factor supporting our con-

clusion is the careful attention the military judge accorded the insanity issues at trial. His observations and queries to the trial defense team were met by their assurances that no mental responsibility issues existed, and even his astute questioning in this area during the trial did not evidence any mental responsibility or mental capacity issue which compelled action by him as the presiding officer.

*See also United States v. Young,* 43 M.J. 196, 197 (1995)(citing *United States v. Van Tassel,* 38 M.J. 91, 95 (C.M.A.1993))(where the offenses pre-dated Article 50a), and *United States v. Dock,* 28 M.J. 117, 120 (C.M.A. 1989)(which served as the basis for the rule adopted in *Cosner* ).

We fully recognize the differences in the standards of proof for mental responsibility and mental capacity. *Compare United States v. Dubose,* 44 M.J. 782 (N.M.Ct.Crim. App.1996) *with* R.C.M. 706 (requiring examination if a preponderance of the evidence indicates a lack of mental capacity to understand and cooperate in the proceedings) *and* R.C.M. 1203(c)(5) (the substantial evidence means more than a diagnosis of mental illness, however severe, and requires that any such illness preclude meaningful participation and cooperation in the defense— whether at trial or during the appellate process). We decline to make such a determination in a factual void, and thus have looked beyond the mere assertions of the appellant, her counsel, and Mr. Folsom, to the record and proceedings below for evidence of lacking mental capacity. We find no evidence appellant's mental capacity is validly raised. As was recently stated by the United States Court of Appeals for the Armed Forces in considering an analogous issue: "[i]f proffered newly discovered evidence patently is full of holes when considered in light of the record of trial ... it would be absurd to hold the reviewing authority slave to the facial, though farcical, so-called 'dispute' in the evidence." *United States v. Sztuka,* 43 M.J. 261, 268 (1995).

### Unlawful Command Influence

[7–9]  The appellant also asserts unlawful command influence on her court-martial. Al-though she provides a number of indicia that she was **unpopular** with the command element, she provides no evidence that the "mortal enemy of military justice," unlawful command influence, actual or apparent, was even so much as "in the air" during her trial. *United States v. Thomas,* 22 M.J. 388, 393 (C.M.A.1986), *cert. denied,* 479 U.S. 1085, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987); *United States v. Allen,* 33 M.J. 209, 212 (C.M.A. 1991), *cert. denied,* 503 U.S. 936, 112 S.Ct. 1473, 117 L.Ed.2d 617 (1992). Although the appellant's trial defense team attempted to invoke the specter of unlawful command influence to imply that witnesses may have fabricated evidence or testimony, the military judge correctly sustained a timely objection to this line of inquiry because it was based on no more than subjective speculation. *See, e.g.,* Record at 677–79.[6]  The record contains no evidence of the exercise of improper influence on any prospective witnesses or court-martial members. A comprehensive and individualized *voir dire* of the panel was conducted prior to trial, and *every* defense challenge for cause was granted by the military judge. Significantly, the defense made no peremptory challenges to the panel. Record at 451–52.[7]  We specifically find that appellant's "generalized, unsupported claims of command control" fail to meet the threshold burden of production noted in *Green v. Widdecke,* 42 CMR 178, 181, 1970 WL 7035 (CMA 1970). *See also United States v. Ayala,* 43 M.J. 296, 299 (1995), *United States v. Gerlich,* 45 M.J. 309, 310 (1996); and *United States · v. Johnston,* 39 M.J. 242, 244 (1994)(which recognizes the need for a relatively low production burden, but cautions against reliance on the kind of wishful think-

---

**6.**  Nor can the fact that the battalion commander ordered appellant into pretrial confinement be stretched into some insidious form of unlawful command influence. Such actions occur on a routine and daily basis, and represent an exercise of an independent discretionary function inherent in command, and reviewable both in the military magistrate framework and by the military judge. *See generally* Appellate Exhibits II–IV; Security Battalion Order P5821.1H (as referenced in Appellate Exhibit II at 6); and R.C.M. 304–305. The personal involvement of the commander is not discretionary, but instead is mandated by R.C.M. 305(h).

**7.**  We are likewise not convinced that either appellant's lack of mental capacity or an ineffective assistance by her trial defense team led to the court membership which heard her case. Trial defense counsel clearly availed themselves of ample opportunity for *voir dire,* both individual and group, which resulted in their raising challenges for cause which were readily granted. Such is not grist for the mill of ineffective assistance. We find that the record below amply supports our conclusion that unlawful command influence played no part in the convictions which cause our review of appellant's claims today.

ing proffered by appellant under the facts of this case).

▮ The appellant also implies that the presence of Colonel Siegel, Chief Defense Counsel of the Marine Corps, in the courtroom during her trial was unlawful command influence. She proffers no evidence that Colonel Siegel's presence demonstrated anything more than an appropriate exercise of the functional mandate that she work to ensure that Marine Judge Advocates assigned to defense duties were appropriately trained and able to perform these demanding duties. An opportunity to observe counsel in a contested members case involving a senior military member would seem instead to provide a superb occasion to evaluate counsel's performance and demonstrates an interest in the job they are doing. Appellant's Brief at 20; SJAR Addendum at 5–6.

### Failure To Disclose Evidence To The Defense

▮ The appellant's fourth assignment of error asserts that the Government's unlawful failure to disclose "exculpatory" information requires a new trial. This is most innovative. The appellant asserts, but offers no evidence of even the existence of, certain "drug waivers" in the records of First Sergeant Pejack, the appellant's company first sergeant, and the victim/witness on the disrespect offense at her trial. The appellant attempts to stretch her pretrial discovery request to encompass with specificity a request which is not within the four corners of the document. As all-inclusive as such a request might be, it cannot serve the purpose to which the appellant puts it in these circumstances.

First, there is no objective evidence of the existence of the purported waivers. Even if the material did exist at some time in the past, its relevance to the appellant's case would be speculative, at best. The appellant fails to demonstrate how, even if such extrinsic evidence existed from more than 20 years earlier, it would supplement any cross-examination designed to diminish the credibility of First Sergeant Pejack as a witness.[8] Even if we assume the evidence exists and was improperly withheld, we cannot construct an evidence model which would allow proof of such a collateral matter by extrinsic evidence under these circumstances. Any record of such an admission may actually have enhanced the credibility of a witness honest enough to voluntarily make it, since no *crimen falsi* or felonious conviction is at issue.[9]

Even recognizing the fact that requested discovery need not produce evidence admissible at trial, we can discern no direct and palpable link between such "evidence"[10] and any prejudice to the substantial rights of the appellant under Article 59, UCMJ, 10 U.S.C. 859, in these circumstances. The charge relating to First Sergeant Pejack resulted in a not guilty finding by the members at trial, and her role in the urinalysis testing process concerning the appellant was both minor and ministerial in nature.[11] No "reasonable probability" that the Government's failure to disclose the evidence in question, assuming its existence, was "sufficient to undermine confidence in the outcome" of the proceedings. *United States v. Watson*, 31 M.J. 49, 54 (C.M.A.1990)(citing *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383–84, 87 L.Ed.2d 481 (1985)). While we are mindful that the same duty of disclosure applies to both exculpatory and impeachment

---

8. Since the proffer indicates that First Sergeant Pejack is now retired, the 20 year period chosen is at a minimum. If she served on active duty beyond 20 years the chronological attenuation may even be greater.

9. In this context, we note the prohibition of extrinsic evidence to attack the credibility of a witness under MIL. R. EVID. 608(b), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.), and the further limitation of attack to the issue of truthfulness or untruthfulness. We fail to see how the purportedly withheld evidence here meets even this threshold. Beyond that, even had First Ser-

geant Pejack been *convicted* of a serious crime, that fact would normally be inadmissible as having occurred more than 10 years prior to the intended use. MIL. R. EVID. 609(b).

10. We note also that appellant does not appear to have taken subsequent measures to ascertain the existence of the evidence here in question.

11. Her role as an observer during the provision of a urine sample might well be explained by their gender identities and respective grades as staff noncommissioned officers.

evidence, we likewise note that materiality is the touchstone for evaluation of these instances. *Watson*, 31 M.J. at 54, (citing *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)(exculpatory evidence)), and *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)(impeachment evidence). Because the appellant was acquitted of the only charge on which First Sergeant Pejack was a principal witness, the information in question, even if existent, relevant, and unlawfully withheld, cast no reasonable doubt on the validity of the proceedings. *United States v. Eshalomi*, 23 M.J. 12, 22 (C.M.A.1986); *see also United States v. Sebring*, 44 M.J. 805, 808–10 (N.M.Ct.Crim.App.1996)(analyzing the recent Supreme Court decision in *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), on the issue of *materiality* of information in the context of a defense discovery request)(emphasis added).

### Allegations Of Factual Insufficiency

The appellant's final assertions of error both involve the factual sufficiency of the evidence to support her conviction for unauthorized absence during the period 23–25 March 1993, and for her knowing use of a prohibited substance on the two occasions for which she stands convicted. After weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are convinced of the appellant's guilt of these offenses beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A.1987); *see* Art. 66(c), UCMJ, 10 U.S.C. § 866(c).

Following our careful examination of the record of trial, the assignments of error, and the Government's response thereto, we conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed.

Accordingly, the findings of guilty and the sentence, as approved on review below, are affirmed.

Senior Judge McLAUGHLIN and Judge WYNNE concur.