OLIVER, Chief Judge:
A military judge, sitting as a general court-martial, found the appellant guilty, contrary to his pleas, of an 8-day period of unauthorized absence, violation of a lawful general order, and making and possessing an unregistered bomb, in violation of Articles 86, 92, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 892, and 934 (1994)[hereinafter UCMJ]. The military judge acquitted the appellant of related assault and attempted murder charges. The appellant’s sentence included confinement for 12 months and a bad-conduct discharge.
This case is before us a second time. In United States v. Dubose, 44 M.J. 782, 784 (N.M.Ct.Crim.App.1996), this court held that the appellant had failed to prove by clear and convincing evidence that he lacked mental responsibility when he committed the offenses of which he was convicted. In reviewing this determination, our superior Court concluded that we had applied the improper test when we required “clear and convincing objective evidence” rather than permitting the appellant to rely on “subjective medical opinion” that he lacked mental capacity. United States v. Dubose, 47 M.J. 386, 388-89 (1998)(emphasis added). Our higher court returned the ease for a determination after we applied the correct legal standard. Id. at 389.
We have again carefully reviewed the record of trial, the appellant’s two assignments of error,[1] and the Government’s response. For the reasons discussed below, we conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Art. 59(a), UCMJ, 10 U.S.C. § 859(a).
Facts and Evidence
Many of the facts in this ease are not in dispute. The appellant constructed a destructive device and placed it in his wall locker. His avowed purpose was to commit suicide. He then left his unit and remained *944 away as an unauthorized absentee for a period of 8 days. Because of his actions prior to absenting himself, members of his Marine unit became concerned. They carefully opened the locker and found and disassembled a homemade bomb. This device had the potential to explode and cause death or injury to those nearby.
What is in dispute is the appellant’s contention that he lacked mental responsibility for his criminal actions at the time he committed them. The appellant introduced the testimony of a neuropsyehologist and two clinical psychologists, one of whom evaluated him pursuant to Rule for Courts-Martial 706, Manual for Courts-Martial, United States (1995 ed.)[hereinafter R.C.M.]. The thrust of their testimony was that, at the time of the offense, the appellant suffered from multiple-personality disorder (MPD), post-traumatic stress disorder (PTSD), and severe depression. These conditions, they contended, constituted a severe mental disease or defect that prevented him from appreciating the criminality of his conduct. The appellant also presented the testimony of his squad leader concerning his abnormal behavior on the day of the offense. Finally, he testified, both as “Jack” and as his “protector” personality, “Jake,” concerning the background of his mental problems and the suicidal feelings he had as a result of his learning of his girlfriend’s infidelity and the subsequent breakup of their relationship.
The Government presented the testimony of two medical doctors that, while the appellant manifested various abnormalities, they did not rise to a severe mental disease or defect. Moreover, they testified that, no matter which personality was in control at the time of the offenses, he would have fully understood the wrongfulness of his actions. Various Marines testified that the appellant was a highly professional and conscientious squad leader who always appeared to be in control of his emotions. The Government introduced an apparent checklist the appellant had prepared just prior to the offenses, which made reference to finishing a “B-trap” and preparing his truck and equipment for leaving the base. Prosecution Exhibit 8. Finally, the Government called a fellow confi-nee who had spoken with the appellant for about 2 hours “just about every day” of the 111 days they spent together in the brig. Record at 569. According to this testimony, the appellant admitted telling the mental health practitioners “what they wanted to hear” and that he does not think that he suffers from any mental illness. Id. at 570.
Lack of Mental Responsibility
The military justice system presumes that every service member is sane and is therefore responsible for his or her actions. United States v. Hargrove, 25 M.J. 68, 71 (C.M.A.1987); see R.C.M. 916(k)(3)(A). Article 50a, UCMJ, 10 U.S.C. § 850a, provides, however, that:
(a) It is an affirmative defense in a trial by court-martial that, at the time of the commission of the acts constituting the offense, the accused, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of the acts. Mental disease or defect does not otherwise constitute a defense.
(b) The accused has the burden of proving the defense of lack of mental responsibility by clear and convincing evidence.
See R.C.M. 916(k); see also R.C.M. 916(b).
To meet this standard, the proponent of this affirmative defense must show, with “convincing clarity,” that he lacked mental responsibility at the time of the offense. Dubose, 47 M.J. at 388 n. 3 (quoting United States v. Owens, 854 F.2d 432, 435 (11th Cir.1988)). “Clear and convincing evidence” constitutes a “middle level burden of proof,” something less than “unequivocal” or “proof that admits of no doubt.” Dubose, 47 M.J. at 388. The appropriate standard lies somewhere between “preponderance of the evidence” and “beyond a reasonable doubt.” Id. at 388 n. 3 (quoting Addington v. Texas, 441 U.S. 418, 431-32, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979)). This court has observed: “A diagnosis of severe mental disease or defect ... does not translate directly into the affirmative defense of lack of mental responsibility.” United States v. Jones, 46 M.J. 535, 539 (N.M.Ct.Crim.App.1997), rev. granted, 48 M.J. 347 (1997).
*945 The question of whether a person suffering from an MPD has a severe mental disease or defect is an issue of first impression in the military. We are unwilling to conclude categorically that MPD does or does not constitute a severe mental disease or defect. First, there appears to be no consensus on the issue even among medical experts. Second, the severity of the condition and its impact upon a service member’s ability to conform his conduct may differ dramatically from one case to the next. To the extent that the condition, as developed factually at trial, constitutes only a non-psyehotie behavior disorder or neuroses, it would not constitute a defense. United States v. Lewis, 34 M.J. 745, 747 (N.M.C.M.R.1991); see R.C.M. 706(e)(2)(A)(“The term ‘severe mental disease or defect’ does not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct, or minor disorders such as nonpsychotic behavior disorders and personality defects”). However, we can imagine a case in which the evidence establishes convincingly that a service member suffered from MPD, that it was a serious mental disease or defect, and, as a result, he could not appreciate the nature and quality or the wrongfulness of her actions. Rather than attempting to provide categorical rules, we suggest that the trier-of-faet at trial and this court on appeal must apply the legal principles contained in Art. 50a, UCMJ, 10 U.S.C. § 850a, and R.C.M. 916(k), to the evidence presented in each case.
We are also unwilling to lay down a hard-and-fast rule on how to determine criminal liability in cases where the “host” personality may be unaware of criminal activities in which the “alter” personality is involved.[2] See United States v. Denny-Shaffer, 2 F.3d 999, 1006-09 (10th Cir.1993). Once again, the trier-of-fact and this court must evaluate the pertinent facts on a case-by-case basis. Where, as in the instant case, the evidence establishes that the “host” or the “alter” personality in control at the time are able to appreciate the nature and quality or the wrongfulness of the criminal acts m question, however, we conclude that the “host” ought not be absolved of criminal responsibility.
We have carefully considered all of the relevant evidence contained in the record of trial, both subjective and objective. We also found helpful the briefs of the parties in highlighting the evidence most favorable to each side. Our review included both the testimony of the medical experts and the other testimony and exhibits the Government and the appellant introduced. The defense and Government experts disagreed as to the effect of the appellant’s physical and mental abnormalities on the ability of Jack and Jake to appreciate the criminality of their conduct. However, both personalities testified that they knew it was wrong to build a bomb, wrong to violate lawful orders, and wrong to leave one’s military unit without authority.
Although the facts in this case are highly unusual, we have no concern that the system is stigmatizing and punishing one who was “innocent” with respect to the criminal acts of his alter-ego, as the appellant contends in his brief. See Brief and Assignments of Error on Behalf of Appellant at 19. We are confident that the appellant, as Jack, was well aware that what he was doing was wrong and constituted crimes under the UCMJ. He admitted to an agent of the Naval Criminal Investigative Service that he, as Jack, recalled purchasing materials and using those materials to construct an explosive device. Record at 189. He also admitted that he decided to remain in an unauthorized absence status after he became aware that he, as Jake, was driving in the mountains of southern California, away from his unit without authority. Id. at 453-54, 470; see id. at 493. Indeed, he calculated that, despite his violation of the law, he could spend a few days away from his unit and face nothing more than nonjudicial punishment. Id. at 454.
*946 After a careful review of the entire record, we conclude, as did the military judge who saw and heard the witnesses, that the appellant failed to meet his burden of proving by clear and convincing evidence his lack of mental responsibility for the offenses of which he was convicted.
Military Judge’s Ruling on the Defense Expert
As to the appellant’s second assignment of error, we resolved this issue in our earlier opinion. Dubose, 44 M.J. at 784, rev’d on other grounds, 47 M.J. at 389. Although an accused is entitled to expert assistance, if relevant and necessary to the preparation of his defense, he is not entitled to any particular expert. United States v. Burnette, 29 M.J. 473, 476 (C.M.A.), cert. denied, 498 U.S. 821, 111 S.Ct. 70, 112 L.Ed.2d 43 (1990); Mil.R.Evid. 706(c), Manual for Courts-Martial, United States (1995 ed.). Although additional experts were available at military medical facilities in the southern California area, the defense never requested the assistance of any other neurologist or psychiatrist. The appellant could either accept such free assistance or use his own resources to obtain the testimony of a civilian expert. The military judge did not err in refusing to order that the Government provide the civilian expert assistance the appellant had requested.
Conclusion
Accordingly, we affirm the findings of guilty and the sentence, as approved on review below.
Senior Judge SEFTON and Judge ROLPH concur.

. I. THE GOVE[RN]MENT FAILED TO PROVE THE CHARGES AND SPECIFICATIONS BEYOND A REASONABLE DOUBT BECAUSE THE APPEL[L]ANT PROVED BY CLEAR AND CONVI[NC]ING EVIDENCE THE AFFIRMATIVE DEFENSE OF LACK OF MENTAL RESPONSIBILITY, I.E., THE DEFENSE PROVED THAT APPELLANT WAS SUFFERING FROM A SEVERE MENTAL DISEASE OR DEFECT WHICH PREVENTED HIM FROM BEING ABLE TO APPRECIATE THE NATURE AND QUALITY OR WRONGFULNESS OF HIS CONDUCT.
II. THE MILITARY JUDGE ERRED WHEN HE DENIED THE APPELLANT’S REQUEST FOR AN EXPERT WITNESS IN THE FIELD OF NEUROLOGY AND PSYCHIATRY.

. An MPD sufferer’s "host” personality is, "the personality that has executive control of the body for the greatest percentage of time during a given time period.” Bennett G. Braun, Treatment of Multiple Personality Disorder, xiii (1986). An "alter” personality is "any personality or fragment other than the host personality.” Id.