# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
ALDYKIEWICZ, SALUSSOLIA, and WALKER
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Specialist JEREMY N. NAVARETTE**
**United States Army, Appellant**

ARMY 20160786

Headquarters Fort Drum
S. Charles Neill, Military Judge
Colonel Peter R. Hayden, Staff Judge Advocate

For Appellant: Captain Zachary A. Gray, JA; Major Jack D. Einhorn, JA.

For Appellee: Major Dustin B. Myrie, JA; Lieutenant Colonel Wayne H. Williams, JA; Colonel Steven P. Haight, JA.

29 January 2020

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WALKER, Judge:

The issue before this court is whether appellant has raised a "substantial question" as to his mental responsibility at the time of the charged offense or mental capacity to understand and intelligently cooperate in appellate proceedings. We recognize that appellant has experienced significant physical and emotional trauma throughout his life resulting in post-traumatic stress disorder (PTSD) and that he suffers from bipolar disorder with psychotic features. However, despite being afforded additional opportunity, his appellate counsel have failed to demonstrate a nexus between any of appellant's mental health diagnoses and his mental responsibility at the time of the charged offense or ability to cooperate intelligently in his appellate proceedings, as required by Rule for Courts-Martial [R.C.M.] 1203(c)(5). We therefore deny appellant's motion for an R.C.M. 706 inquiry into his mental capacity and mental responsibility.

## BACKGROUND

### A. Procedural Background

Appellant filed his brief with this court on 27 April 2018 asserting that his punitive discharge was inappropriately severe in light of his intellectual disability and psychological complications. Appellant also submitted matters pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), as part of the appendix to his appellate brief.[1]

On 30 July 2018, appellant moved for us to stay the appellate proceedings and order an R.C.M. 706 inquiry. Without ruling on appellant's motion, we issued a stay of the proceedings to allow for a full consideration of appellant's motion and the supporting documents he provided this court. The basis for appellant's motion for an R.C.M. 706 inquiry was his competence to participate in the appellate proceedings. *See* R.C.M. 1203(c)(5). Citing *United States v. Massey*, 27 M.J. 371, 374 (C.M.A. 1989), appellant requested that if we order an inquiry into appellant's current mental status, we should similarly order an inquiry into his mental responsibility at the time of the offense. Appellant's request included detailed information pertaining to appellant's post-confinement mental health hospitalizations and diagnoses of bipolar disorder I and mania with psychosis in May 2018, just a few weeks after appellant filed his appeal before this court. On 17 September 2018, we denied appellant's motion for an R.C.M. 706 inquiry and affirmed appellant's finding of guilty and sentence. *United States v. Navarette*, ARMY 20160786, 2018 CCA LEXIS 446 (Army Ct. Crim. App. 17 Sept. 2018).

Without deciding whether this court erred by denying appellant's motion for an R.C.M. 706 inquiry, our superior court set aside our decision and remanded the case back to us so that: (1) appellate counsel has the opportunity to demonstrate a nexus between appellant's mental health issues and his capacity to participate in appellate proceedings; and (2) we may "more fully evaluate appellant's R.C.M. 1203 motion in light of counsel's representations and all other evidence relating to Appellant's mental capacity particularly in regard to the events that unfolded during the period of appellate representation." *United States v. Navarette*, 79 M.J. 123, 127 (C.A.A.F. 2019).

On 22 October 2019, appellant filed a new motion to stay the appellate proceedings and order an R.C.M. 706 into both his mental capacity to assist in his appeal and his mental responsibility at the time of the offense for which he was convicted. As part of his motion, appellant provided additional psychological

---

[1] Appellant has not moved to withdraw or supplement his brief or appendix.

records from April 2019, an affidavit from appellant's forensic psychologist at trial generally outlining the symptoms and potential impact of bipolar disorder and intellectual developmental disability on competency and mental responsibility,[2] and the curriculum vitae for a forensic psychologist whom appellant requests assist in conducting an R.C.M. 706 inquiry.

### B. Mental Health Conditions Presented at Trial

Appellant's conviction for distribution of cocaine stems from a fateful encounter with a female undercover law enforcement agent, Special Agent (SA) Stewart. Appellant's instant infatuation with this law enforcement agent culminated in his illegal distribution of cocaine to her and ultimate conviction.

On 15 July 2016, military law enforcement conducted a drug suppression operation at a bar outside of Fort Drum, New York. Appellant was not a target of the investigation but ensnared himself in the agent's orbit. Appellant approached SA Stewart and engaged her in conversation, during which he confessed that he found her beautiful and kissed her on the cheek. They later exchanged phone numbers, and appellant invited SA Stewart to a local party.

Later in the evening, over text messages, appellant mentioned grabbing some liquor. Special Agent Stewart responded that she was looking for something more. Using slang, appellant asked if she meant cocaine and marijuana. When SA Stewart confirmed that this was what she meant, appellant responded, "You met the right dude[.] How much you looking for?" Two weeks later appellant sold SA Stewart 3.5 ounces of cocaine for $280.

At trial, appellant's defense was that he was entrapped into selling drugs to SA Stewart to impress a pretty girl, not because he was a drug dealer. Appellant's mental health played a prominent role in support of that claim. Appellant presented the testimony of a forensic psychologist who interviewed appellant and several of his family members, reviewed the law enforcement investigation and appellant's mental health records, and conducted psychological testing on appellant. The forensic psychologist affirmed appellant's previous diagnoses of attention deficit disorder without hyperactivity (ADD) and PTSD.[3] While appellant explicitly

---

[2] We note that Dr. Richards, who was appellant's forensic psychologist during trial, has not met with appellant in the years since his trial nor has he conducted an R.C.M. 706 evaluation on appellant.

[3] Dr. Richards testified that while appellant experienced some trauma during his deployment, appellant's PTSD stemmed primarily from childhood trauma involving neglect, physical abuse, sexual assault, and experiences witnessing domestic violence and sexual abuse of siblings.

(continued . . .)

disavowed a defense of lack of mental responsibility, he presented evidence of his exceptionally low intelligence[4] and mental health diagnoses as evidence of his suggestibility to engage in illegal distribution of cocaine. The forensic psychologist testified that appellant's suggestibility related to his overriding desire for acceptance from others which would drive him to engage in conduct against his self-interests. However, he did not opine that appellant's profound need for acceptance impacted his ability to understand the difference between right and wrong such that appellant lacked mental responsibility for his actions. In closing, appellant's counsel argued that appellant could be easily manipulated and taken advantage of because of his desire to gain SA Stewart's affection.

Despite appellant's assertions that law enforcement entrapped him, on 14 December 2016, a panel of enlisted members sitting as a general court-martial convicted appellant, contrary to his plea, of one specification of wrongful distribution of cocaine in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (2012) [UCMJ]. The panel sentenced appellant to a bad-conduct discharge, confinement for 90 days, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the adjudged sentence.

### C. Appellant's Post-Trial Mental Health Treatment and Bipolar Diagnosis While Pending Appellate Review

On appeal, appellant submitted evidence arising after trial regarding his mental health treatment and bipolar diagnosis.[5] Based upon the evidence before this court, there is no question that appellant's mental health issues have continually plagued him since his conviction in December 2016. Since then, appellant has received both voluntary and involuntary mental health treatment. This court has meticulously reviewed and considered the entirety of appellant's mental health history and hospitalizations in determining whether appellant has raised a substantial question as to whether he possesses the requisite capacity to intelligently participate in his appellate proceedings.

---

(. . . continued)

[4] An expert testified at trial that Appellant's IQ was "extremely low. . . what we used to call the mild mentally retarded range."

[5] There was no objection to this court considering appellant's multiple submissions of medical records and affidavits. We have no reason to question their authenticity. For the purposes of deciding appellant's motion for an R.C.M. 706 inquiry, we treat them as true. *See United States v. Hood*, 47 M.J. 95, 97 (C.A.A.F. 1997) (the court accepting as true two post-trial affidavits because they were unrebutted).

During appellant's confinement he received mental health treatment and was again diagnosed with PTSD, depression, anxiety, and obsessive compulsive disorder. Upon discharge from confinement, appellant reported that his depression had passed and he felt hopeful about his future. He acknowledged and agreed to his provider's instructions to continue mental health treatment upon release from confinement. The provider noted that appellant "is at minimal risk for self-harm at this time." Appellant was released from confinement in late February 2017.

Several months after his release from confinement, appellant was admitted to a hospital in Texas from late August until early October of 2017. In March 2018, he was hospitalized again for several days at a veteran's hospital in California and released on 2 April 2018. Appellant did not provide any details regarding those hospitalizations other than location and length of treatment. A few short days later on 7 April 2018, appellant was involuntarily admitted to a hospital in California where he remained until his 22 April 2018 discharge. During this period of hospitalization, appellant was first diagnosed with bipolar disorder. At the time of his discharge from this hospitalization, appellant was oriented to person, place, time, and situation and the provider notes state "mood stable" and that he was "compliant." Appellant was prescribed several medications for managing his mental health issues and his prognosis was "good with out-patient follow-up." Appellant filed his appeal to this court a few days later on 27 April 2018.

Less than two weeks after filing his appeal and being released from the April 2018 hospitalization, appellant was involuntarily hospitalized again on 9 May 2018. Psychiatric records released to this court show that appellant entered a Los Angeles grade school believing he was with the Federal Bureau of Investigation (FBI), tasked with instructing children on how to respond to a terrorist attack. Under unclear circumstances, appellant then crashed his car into a school bus. At the time of admission to the hospital, appellant suffered from "thought and behavioral disorganization," "grandiose and delusional symptomatology," and "severe difficulties with focus of thought, concentration, and cognitive tracking." Initial medications were unsuccessful in resolving appellant's psychotic and manic symptoms but providers stabilized appellant with a change in medication. On 18 May 2018, appellant's psychiatrist contacted his appellate counsel and informed him of appellant's diagnoses of bipolar disorder I and mania with psychosis.

As a result of appellant's severe delusional actions at a grade school, he was involuntarily hospitalized for psychiatric care for over a month and discharged on 26 June 2018 with the diagnoses of bipolar disorder I and mania with psychosis. The bipolar diagnosis notes stated:

> The bipolar diagnosis has not only affected the patient's general psychological functioning but classically and quite certainly had an impact in terms of affecting his judgment and decision-making capacity

as judgment and awareness of consequences are certainly compromised by the underlying bipolar illness.

Despite the severity of appellant's symptoms at the time of hospitalization, his discharge paperwork indicates he showed "remarkable improvement . . . with complete resolution of psychotic symptomatology. . . ." He was no longer experiencing auditory or visual hallucinations or delusions. Appellant responded well to treatment and medication. At the time of discharge, his "[i]nsight and judgment were good" and his responses to questions were "appropriate and goal-directed." Appellant's prognosis was good "dependent upon the patient's continued compliance with treatment recommendation." On 30 July 2018, just over a month after his release from hospitalization after the delusional grade school incident, appellant filed a motion to stay the appellate proceedings and order an R.C.M. 706 inquiry.

Appellant received emergency medical treatment as recently as late April 2019 as a result of his becoming intoxicated and experiencing a manic episode during which he jumped onto New York City subway tracks and superficially cut his arm.[6] Appellant's actions resulted in law enforcement sending him to an emergency room for evaluation. The provider notes state "[at] this time, he does not meet criteria for involuntary hospitalization." The provider also noted that appellant "denies current delusions" and that his thought process is "linear, goal oriented, not tangential, not disorganized." Throughout the records provided from appellant's mental health visits in March and April 2019, there are references to appellant explaining that he served in the Army, was court-martialed for distribution of cocaine, and is "on leave until his court case is resolved." The historical background notes also indicate appellant was receiving regular treatment from a provider and that he was able to provide a fairly detailed description of his post-trial hospitalizations, marital concerns, and relevant family history. He also references his current employment as an electrician.

## LAW AND DISCUSSION

Upon remand from our higher court, appellant once again moves this court to order an inquiry into both his mental capacity to assist in his appeal and his mental responsibility at the time of the offense for which he was convicted. We hold that appellant has not raised a substantial question as to his mental capacity. More specifically, he has failed to establish a sufficient nexus between his mental health diagnoses and his ability to participate in the appellate proceedings. He has also

---

[6] Appellant submitted additional psychological records and provider notes as part of his current motion before this court to stay the proceedings and order an R.C.M. 706 inquiry.

failed to make a prima facie showing that he suffered from his new diagnosis or related symptoms at the time of his offense such that there is a substantial question as to his mental responsibility at the time of the charged offense. Therefore, we deny appellant's motion for an R.C.M. 706 inquiry into his mental capacity and mental responsibility.

The military affords special consideration to questions concerning an accused's sanity. "Historically, we have given preferential treatment to the question of mental responsibility of a military member, even [if] the matter was not litigated at trial." *United States v. Young*, 43 M.J. 196, 197 (C.A.A.F. 1995). The basis for this preferential consideration is because such issues are "a matter for consideration by highly trained medical personnel." *United States v. Nix*, 15 C.M.A. 578, 36 C.M.R. 76, 81 (1965). While we afford questions concerning an appellant's capacity and mental responsibility preferential treatment, an appellant is still required to satisfy the requisite standards for this court to order an inquiry—whether an R.C.M. 706 inquiry into mental responsibility, or an R.C.M. 1203 inquiry into mental capacity to assist on appeal, or both.

Rule for Courts-Martial 706(4) mandates that "[a]dditional [mental capacity] examinations may be directed under this rule at any stage of the proceedings as circumstances may require." Under R.C.M. 1203(c)(5), "in the absence of substantial evidence to the contrary, the accused is presumed to have the capacity to understand and to conduct or cooperate intelligently in the appellate proceedings." The rule continues:

> If a *substantial* question is raised as to the requisite mental capacity of the accused, the appellate authority may direct that the record be forwarded to the appropriate authority for an examination of the accused in accordance with R.C.M. 706, but the examination may be limited to determining the accused's present capacity to understand and cooperate in the appellate proceedings.

*Id.* (emphasis added).

On appeal, an appellant must make a showing that there is a sufficient reason to question either his mental capacity or his mental responsibility. *See Young*, 43 M.J. at 197. Appellant must "articulate how his mental condition prevents him from being able to understand or participate in the proceedings." *Navarette*, 79 M.J. at 127. "[M]ere diagnosis with a mental health condition, even bipolar disorder, is not on its own sufficient to require a sanity board." *Id.* at 129 (Stucky S., dissenting) (citing *United States v. Inabinette*, 66 M.J. 320 (C.A.A.F. 2008); *United States v. Shaw*, 64 M.J. 460 (C.A.A.F. 2007); *Young*, 43 M.J. 196. In other words, there must

be some evidence of a nexus between appellant's diagnoses and his capacity to understand and participate in the proceedings. *See Id.*

*Motion for R.C.M. 706 Inquiry*

Appellant has had multiple opportunities to provide a nexus between his bipolar diagnosis and his mental capacity—both before this court and our superior court—and has still failed to articulate how his mental health diagnoses prevent him from being able to understand or participate in his appellate proceedings. Our superior court even signaled to appellant examples of the type of information he could provide to satisfy this requirement. *Navarette*, 79 M.J at FN5. *See United States v. Proctor*, 1990 CMR LEXIS 547, at *1, (A.F.C.M.R. May 8, 1990)(finding good cause to order convening of a sanity board where "the [d]ocuments filed with [the court] indicate appellant's longstanding refusal to cooperate with counsel"; "[allied] papers show that the appellant asked that his personal copy of the record be destroyed"; and "defense counsel avers that the appellant apparently believes he will be freed from confinement by divine deliverance in the fashion of St. Paul"). Appellant has not provided evidence establishing a nexus between his mental health and competency on appeal. While appellant has provided clear evidence that he suffers from significant mental health issues, we do not find he has raised a substantial question regarding his competency. The government's concession that we should order an R.C.M. 706 inquiry is entitled to receive our careful consideration. However, we do not concur with, nor are we bound by, the government's concession that appellant has raised a substantial question regarding his competency which requires an R.C.M. 706 inquiry. *See United States v. Emmons*, 31 M.J. 108, 111 (C.M.A. 1981); *United States v. Hand*, 11 M.J. 321 (C.M.A. 1981).

Appellant's counsel has not asserted that appellant "is unable to understand the nature of the proceedings. . . or cooperate intelligently in the defense of the case." R.C.M. 909(a). At oral argument in 2018, appellant's counsel stated he had communicated with his client, but declined to say whether the communication had revealed any competency concerns. Appellant also failed to provide such requested information to our superior court during oral argument on this matter. In appellant's current motion before this court, appellate counsel again fails to provide any information about how appellant's mental health conditions impact his competency, whether based upon his communications with his client or communications by appellant in other forums. Appellant's counsel merely assert a general belief as to concerns about appellant's competency. In the documentation of the three hospitalizations in the months leading up to appellant filing his appeal, there is insufficient information to raise a substantial question as to appellant's competency. Counsel indicate that on more than one occasion, during the appellate representation period, they spoke with appellant while he was in a hospital for in-patient mental health treatment and that fact alone raises concerns about appellant's capacity. However, counsel have not claimed any difficulty in communicating with appellant

or stated a concern about his ability to assist with the appellate process. Rather, counsel only state that during those communications appellant exhibited "symptoms of mania and depression, including rapid speech pattern, disorganized thought patterns, sluggishness, and apathy." These symptoms—whether attributable to appellant's more recent bipolar diagnosis or some other mental health diagnosis—do not automatically present a substantial question as to appellant's capacity to participate in his appellate proceedings. While we acknowledge that appellant suffered a significant delusional episode soon after he filed his appeal before this court, counsel have not provided a nexus as to how that episode impacted appellant's capacity to assist in his defense. Neither appellant nor his appellate counsel has tethered any of these symptoms to a deficiency or inability on appellant's part that has affected his understanding of or cooperation in his appeal.

Appellate counsel continue to assert attorney-client privilege as the basis for their failure to provide a nexus between their client's bipolar diagnosis and his competency. Specifically, appellant's counsel do not believe they could obtain a valid waiver of attorney-client privilege from a client whose mental capacity they question. Yet, counsel apparently believed appellant competent enough to waive psychotherapist-patient privilege in order to provide this court with detailed notes and records from various periods of appellant's hospitalizations and mental health treatments.[7] We respect counsel's declination to pierce the attorney-client privilege with appellant, but in the absence of any nexus between appellant's diagnoses and how his interactions with counsel created competency concerns, we fall back to the presumption that appellant is competent. The medical records provided assist this court in understanding appellant's mental health struggles, but they do not alone satisfy appellant's burden of raising a substantial question as to his competency.

In lieu of counsel providing this court with the requisite information as to the basis for their concerns regarding appellant's competency, appellant provided an affidavit from a former forensic psychologist who evaluated appellant and provided testimony at appellant's trial. The affidavit merely outlines the general *potential* impacts of bipolar disorder, but it does not specifically link any of the symptoms and manifestations of bipolar disorder to appellant. Some of the symptoms outlined in the affidavit are present in appellant's medical records, but neither the medical records nor the affidavit establishes a nexus between the symptoms and appellant's ability to intelligently cooperate in his appellate proceedings.

---

[7] While this court recognizes that appellate counsel may not have been involved in the process of appellant approving the waivers of privilege of the psychotherapist records before this court, we note that counsel certainly rely on those records, and the waiver of privilege upon which they are based, in requesting an R.C.M. 706 inquiry.

We fully recognize and acknowledge that appellant has suffered from significant mental health issues for years. He has had multiple voluntary and involuntary hospitalizations and, by all accounts, continued with out-patient treatment during the period of appellate representation. We do not question that appellant continues to struggle with bipolar disorder, as evidenced by information appellant provided regarding an alcohol-induced manic episode in April 2019. However, a bipolar disorder diagnosis simply does not alone raise a *substantial* question as to appellant's competency.

Further, having reviewed the entire record and considered appellant's mental health hospitalizations and treatment since his trial, appellant has not raised a substantial question as to his mental responsibility at the time of the offense. During appellant's trial he obtained expert witness assistance from a board-certified forensic psychologist who conducted a thorough evaluation and extensive testing of appellant and also reviewed information from another mental health provider. The forensic psychologist did not diagnose appellant with bipolar disorder or any other mental health condition, nor did she note symptoms that would have impacted appellant's competency or mental responsibility. The evaluation did not uncover any concerns as to appellant's mental responsibility nor his capacity to stand trial. At trial, defense counsel did not request an R.C.M. 706 inquiry or question the forensic psychologist's assessment of appellant.

For the foregoing reasons, we hold that appellant has failed to raise a substantial question as to as to his mental capacity to understand and intelligently cooperate in appellate proceedings or his mental responsibility at the time of the charged offenses.

## CONCLUSION

On consideration of the entire record and appellant's submissions before this court, appellant's motion for an R.C.M. 706 inquiry is hereby DENIED. The stay of proceedings is hereby LIFTED.

Appellant's conviction and sentence are again AFFIRMED.[8]

Senior Judge ALDYKIEWICZ and Judge SALUSSOLIA concur.

---

[8] We have again given careful consideration to the sole assignment of error originally asserted by appellant, that his sentence was inappropriately severe. We have also given full and fair consideration to the matters appellant submitted pursuant to *United States v. Grostefon*. We find that neither warrants discussion or relief.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court