*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

───────────────

**UNITED STATES**
Appellee

**v.**

**Jeremy N. NAVARETTE, Specialist**
United States Army, Appellant

**No. 20-0195**
Crim. App. No. 20160786

Argued April 20, 2021—Decided August 10, 2021

Military Judge: S. Charles Neill

For Appellant: *Captain Catherine E. Godfrey* (argued); *Colonel Michael C. Friess, Lieutenant Colonel Angela D. Swilley, Major Jodie L. Grimm,* and *Jonathan F. Potter,* Esq. (on brief); *Colonel Elizabeth G. Marotta, Lieutenant Colonel Tiffany D. Pond, Major Joseph C. Borland,* and *Captain Zachary A Gray*.

For Appellee: *Captain Reanne R. Wentz* (argued); *Colonel Steven P. Haight, Lieutenant Colonel Wayne H. Williams,* and *Major Dustin B. Myrie* (on brief).

Senior Judge STUCKY delivered the opinion of the Court, in which Chief Judge OHLSON and Judge SPARKS joined. Judge MAGGS filed a separate dissenting opinion, in which Judge HARDY joined.

───────────────

Senior Judge STUCKY delivered the opinion of the Court.

This case has come before this Court for the second time. *See United States v. Navarette*, 79 M.J. 123 (C.A.A.F. 2019). During the lengthy appellate process, Appellant has sought a Rule for Courts-Martial [R.C.M.] 706 inquiry to investigate his mental status. Originally and upon remand from this Court, the United States Army Court of Criminal Appeals (CCA) found that Appellant failed to raise a substantial question as to his mental condition. We disagree and reverse.

## I. Background

Appellant was court-martialed for selling drugs to an undercover agent. *Navarette*, 79 M.J. at 124–25. At the time of

trial, Appellant's known mental health diagnoses were low IQ, attention deficit disorder (ADD), depression, anxiety, and post-traumatic stress disorder (PTSD). *Id.* at 125 & n.3; *id.* at 128 & n.1 (Stucky, J., dissenting). His defense counsel introduced evidence of these problems during the court-martial but did not explicitly pursue a lack of mental responsibility defense; rather, they argued that Appellant's troubles made him very suggestible, such that he was entrapped by the undercover agent. *Navarette*, 79 M.J. at 125. Their efforts were unsuccessful: the panel of officer and enlisted members that sat as a general court-martial convicted Appellant, contrary to his pleas, of one specification of wrongful distribution of cocaine, in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a (2012). The panel then sentenced Appellant to a bad-conduct discharge, confinement for ninety days, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged.

## II. Appellate Procedural History

The events between the trial and our first decision in this case proceeded as follows:

> While in confinement, Appellant was treated for [PTSD], anxiety, and obsessive-compulsive disorder. He was released from confinement in late February 2017. In August of that year, he was admitted to Red River Hospital in Wichita Falls, Texas, where he remained for over a month. On March 26, 2018, he was admitted to the Veterans Medical Center Hospital in Long Beach, California, where he remained until April 2. Five days later he was admitted to Aurora Las Encinas Hospital in Pasadena, California, where he remained until April 22. His prognosis at discharge was "good with . . . follow up."

> Despite that positive outlook, on May 9, roughly two weeks after his release from Aurora Las Encinas, Appellant was apprehended by police while "in a florid manic state." Believing himself to be an FBI agent sent to instruct children on how to respond to a terrorist attack, he attempted to enter a school, made threats, crashed his car into a school bus, and then attempted to kill himself. He was again admitted to the hospital, this time at Del Amo

Hospital in Torrance, California. There he was diagnosed with bipolar disorder. His initial seven-day commitment was extended to fourteen and then thirty days, as a Los Angeles County Superior Court repeatedly found him "gravely disabled" under the pertinent California statute—meaning that he was incompetent to feed, clothe, and shelter himself. He was finally discharged on June 26. His prognosis was good, if he continued hospital treatment and his medication regimen, which consisted of two drugs twice daily and another drug once daily. He was prescribed a thirty-day supply of these medications. It is unclear if he ever obtained them.

. . . .

Appellant's brief to the CCA was filed on April 27, five days after his release from Aurora Las Encinas. Following his admission to Del Amo, the severity of Appellant's condition prompted his treating physician to contact Appellant's defense counsel, unsolicited, on May 18 to alert them to the diagnosis and its potential impact on his case. Consequently, on July 30, 2018, just over a month after his release from Del Amo, Appellant moved the CCA to stay appellate proceedings and order an inquiry under [R.C.M.] 706. The Government elected to oppose this motion. Oral arguments were heard on the motion and Appellant's other issues on August 30. During oral argument, Appellate defense counsel declined to make any assertion regarding whether his communications with his client had given rise to any competency concerns. The lower court then denied the motion and affirmed the findings and sentence on September 17, 2018. On February 27, 2019, we granted Appellant's petition for grant of review.

*Navarette*, 79 M.J. at 128–29 (Stucky, C. J., dissenting) (second alteration in original).

Although this Court "granted review to determine whether the Army Court erroneously denied Appellant a post-trial R.C.M. 706 inquiry," we "opt[ed] not to directly answer the granted issues because of concerns that the lower court's review under Article 66, UCMJ, 10 U.S.C. § 866, remain[ed] incomplete." *Navarette*, 79 M.J. at 124. In particular, we were concerned that the CCA had not taken into account the proper considerations when evaluating Appellant's request for an inquiry into his mental condition. *Id.* at 126–

27. As such, we set aside the CCA's decision and remanded the case to the lower court with instructions to (1) "give appellate defense counsel the opportunity to make a showing of nexus between Appellant's significant and documented mental health issues and his capacity to participate in appellate proceedings" and (2) "more fully evaluate Appellant's R.C.M. 1203 motion in light of counsel's representations and all other evidence relating to Appellant's mental capacity, particularly in regard to the events that unfolded during the period of appellate representation." *Id.* at 127.

The case was remanded to the CCA and Appellant again filed a motion for the CCA "to order an inquiry into the mental capacity and mental responsibility of [Appellant], *and* to stay the proceedings pending the outcome of such proceeding pursuant to [R.C.M.] 1203 and 706(c)(5)." Appellant submitted additional evidence to support the motion.

First, Appellant included an affidavit from Dr. Kevin Richards, a forensic psychologist. In the affidavit, Dr. Richards detailed how the mental illnesses with which Appellant was diagnosed, especially bipolar disorder and intellectual disability, can affect mental capacity and responsibility. He explained that these illnesses can "severely limit an individual's ability to manifest a rational and factual understanding of the charges against them as well as ability to assist an attorney in preparing a defense" and that Appellant's specific mental competency and responsibility "could only be determined if he were to undergo a RCM 706 evaluation to address the connections between his diagnosed disorders and the psycho-legal questions at hand."

Second, Appellant offered additional medical records stemming from an emergency room visit in April 2019. The police had to bring Appellant to the emergency room after he "drank alcohol . . . , became manic and impulsive and had erratic behavior, jumped into tracks of subway and started to cut his forearm superficially, [and was] pulled out by [Metropolitan Transportation Authority workers]." The records noted that Appellant declined the hospital's offer of inpatient hospitalization and the hospital decided that he did not meet the criteria for involuntary hospitalization, but the doctor still had to review with Appellant a "suicide safety plan" and "plans of care if in crisis."

Finally, Appellant's lead appellate defense counsel, Captain Zachary Gray, detailed his concerns about Appellant's competency.[1] In the motion, Captain Gray said that he tried to follow this Court's guidance in our original opinion by "assert[ing] . . . his personal beliefs based on interactions with appellant" without violating attorney-client privilege. He explained that at first, he only was aware of Appellant's diagnoses that were known at trial, and so he knew that Appellant had mental health problems but believed that Appellant was competent. However, this was before Appellant was diagnosed with bipolar disorder and Captain Gray became aware of this diagnosis. Learning about the diagnosis "significantly impact[ed] counsel's perception of [his communications with Appellant] and provide[d] critical context to what counsel would describe as challenging conversations." Specifically, he realized that "appellant exhibited what counsel now recognizes as symptoms of mania and depression [associated with bipolar disorder], including a rapid speech pattern, disorganized thought patterns, sluggishness, and apathy." Most troublingly, Appellant was not forthcoming with Captain Gray about these issues: he did not know until seeing Appellant's new medical records that "[o]n more than one occasion . . . appellant was communicating with counsel from locked psychiatric wards but failed to disclose this fact." Consequently, Captain Gray "had, and continues to have, substantial questions about appellant's ability to assist in his own defense."

The CCA then considered Appellant's request for a second time. *United States v. Navarette*, No. ARMY 20160786, 2020 CCA LEXIS 31, at *11–20; 2020 WL 489355, at *4–7 (A. Ct. Crim. App. Jan. 29, 2020) (unpublished). In this second review, the Government agreed with Appellant that "a substantial question as to [Appellant's] current mental capacity has been raised" and that an R.C.M. 706 inquiry should be ordered to " 'determin[e Appellant's] present capacity to understand and cooperate in the appellate proceedings.' " (quoting

---

[1] Captain Gray has since withdrawn as appellate defense counsel, and Captain Catherine Godfrey has taken his place as lead appellate defense counsel. Captain Godfrey submits that she "has formed her own serious concerns regarding appellant's capacity to cooperate intelligently in his own defense."

R.C.M. 1203(c)(5)). The Government's only disagreement with Appellant was that it thought that the inquiry should be limited to Appellant's mental capacity to participate in the appellate proceedings, rather than also consider his competency during the time of the charged offenses. The lower court acknowledged the Government's concession and the fact that Appellant "ha[d] provided clear evidence that he suffers from significant mental health issues." *Id.* at \*15; 2020 WL 489355, at \*5. The court also considered appellate defense counsel's representations (outlined above) in his R.C.M. 1203 motion. *See id.* at \*15–17, 2020 WL 489355, at \*6. Still, the court held once again that "[Appellant] has not raised a substantial question as to his mental capacity," because he "failed to establish a sufficient nexus between his mental health diagnoses and his ability to participate in the appellate proceedings" and "also failed to make a prima facie showing that he suffered from his new diagnosis or related symptoms at the time of his offense such that there is a substantial question as to his mental responsibility at the time of the charged offense." *Id.* at \*12; 2020 WL 489355, at \*4. Therefore, the court again denied Appellant's motion for an R.C.M. 706 inquiry and affirmed the findings and sentence. *Id.* at \*20; 2020 WL 489355, at \*7.

Appellant moved for reconsideration, but the CCA denied the motion.[2]

### III. Law and Discussion

#### *A. Mental Competency*

"Historically, we have given preferential treatment to the question of mental responsibility of a military member, even though the matter was not litigated at trial." *United States v. Young*, 43 M.J. 196, 197 (C.A.A.F. 1995), *quoted in United States v. Harris*, 61 M.J. 391, 395 (C.A.A.F. 2005).

---

[2] Attached to the request for consideration was an affidavit from Captain Gray, which detailed his concerns about Appellant's mental competency. As the affidavit was not before the CCA when the court issued the decision that we are reviewing here, we have not considered it in reaching our conclusion. We only consider those representations made by Captain Gray in Appellant's renewed R.C.M. 1203 motion.

That preferential treatment begins at the trial level: R.C.M. 706 allows for an inquiry, by a board of one or more professionals, to evaluate whether "the accused, at the time of the offense and as a result of severe mental disease or defect" was thereby " 'unable to appreciate the nature and quality or wrongfulness of his or her conduct' " and " 'unable to understand the nature of the proceedings against [him or her] or to conduct or cooperate intelligently in the defense.' " *Navarette*, 79 M.J. at 125 (quoting R.C.M. 706(c)(2)(C)–(D)).

Then, during the appellate process, "R.C.M. 1203(c)(5) allows that an appellate authority may order a psychiatric evaluation in accordance with R.C.M. 706 if a 'substantial question is raised as to the requisite mental capacity of the accused.' " *Id.* at 125–26 (quoting R.C.M. 1203(c)(5)). To put into question his capacity under R.C.M. 1203(c)(5), an appellant must show there is a substantial question regarding his ability to "conduct and cooperate intelligently in the appellate proceedings." *Id.* at 126 (quoting R.C.M. 1203(c)(5)). In our first decision concerning this case, we said that "the rule requires that an appellant establish a nexus between his mental impairment and his ability to participate intelligently in the proceedings." *Id.* However, we did not define "substantial question." *See id.* at 124.

As a preliminary matter then, we must determine what the term "substantial question" means. "Historically the phrase 'substantial question' has referred to questions that are 'fairly debatable.' " *United States v. Handy*, 761 F.2d 1279, 1281 (9th Cir. 1985). The Supreme Court has defined similar terms as follows:

> In requiring a question of some substance, or a substantial showing of the denial of [a] federal right, obviously the petitioner need not show that he should prevail on the merits. . . . Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further.

*Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 1090 (1983) (alterations in original) (internal quotation marks omitted) (citations omitted).

We now further clarify that a "substantial question" with regard to R.C.M. 1203(c)(5) is one in which the appellant's " 'mental capacity to understand and to conduct or cooperate intelligently in the appellate proceedings,' " *Navarette,* 79 M.J. at 129 (quoting R.C.M. 1203(c)(5)), is fairly debatable among jurists of reason. *See*, *e.g.*, *Estelle*, 463 U.S. at 893 n.4. This is not a high bar. We review the CCA's decision to grant or deny a motion for an inquiry of this nature for an abuse of discretion. 79 M.J. at 126. A court abuses its discretion when its findings of fact are clearly erroneous, its decision is influenced by an erroneous view of the law, or the court's decision is unreasonable in light of the law and facts. *United States v. Ayala*, 81 M.J. 25, 27–28 (C.A.A.F. 2021).

## *B. Analysis*

The heart of the CCA's second ruling was that Appellant, through his appellate defense counsel, failed, yet again, to "satisfy the requisite standards for [the CCA] to order an inquiry" into Appellant's mental health because he did not "provide any information about how [A]ppellant's mental health conditions impact his competency." *Navarette*, 2020 CCA LEXIS 31, at *13, *16; 2020 WL 489355, at *5, *6. In light of the information before us, these conclusions are clearly unreasonable. *See*, *e.g.*, *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000). Therefore, we hold that the CCA abused its discretion by denying Appellant's request for a post-trial R.C.M. 706 inquiry.

As Appellant's brief itself put it, the CCA has "raised the threshold showing for a post-trial R.C.M. 706 inquiry to an insurmountable bar." All that an appellant has to show for this inquiry to be ordered is evidence of his impaired mental health that shows his ability to participate in the proceedings is fairly debatable. He does not have to prove that he in fact lacks the mental capacity to proceed. Yet, that seems to be exactly what the CCA required him to show. While the lower court said that Appellant has not offered substantial evidence concerning his mental condition and how it affects his ability to participate in the proceedings, he has provided copious proof of his multiple mental illness diagnoses, manic episodes, hospitalizations, and suicide attempts, including a major psychiatric event just before this Court held oral arguments for the first time. In light of his recurring pattern of mental

health crises, hospitalization, treatment, and then relapse throughout his case, as well as the concerns expressed by his counsel, we conclude that his capacity to understand and to conduct or cooperate intelligently in the appellate proceedings is fairly debatable among jurists of reason. Even the Government conceded before the CCA that Appellant had raised a substantial question as to at least his present mental capacity.[3] Nevertheless, the CCA completely disregarded both that concession and the very reasonable concerns of former appellate defense counsel, deciding that "Appellant's counsel has not asserted that appellant is unable to understand the nature of the proceedings . . . or cooperate intelligently in the defense of the case." *Navarette*, 2020 CCA LEXIS, at \*15, 2020 WL 489355, at \*6 (alteration in original) (citation omitted) (internal quotation marks omitted). To the contrary, Captain Gray explicitly expressed his belief to the CCA in the R.C.M. 1203 motion that Appellant's mental illnesses caused Appellant to have trouble communicating with counsel, which Captain Gray thought raised "substantial questions about [A]ppellant's ability to assist in his own defense." While Captain Gray has since withdrawn from the case, Appellant's current lead defense counsel, Captain Godfrey, shares his grave concern about Appellant's ability to work with defense counsel. If the assertions of counsel along with all of the evidence previously cited do not constitute a substantial question, we query what possibly could. As a result, we conclude that Appellant has "establish[ed] a nexus between his mental impairment and his ability to participate intelligently in the proceedings," *Navarette,* 79 M.J. at 126, and the CCA's continued insistence that Appellant still has not made a sufficient showing cannot stand.

Thus, we hold that the CCA abused its discretion by denying Appellant's request for a second time and that an R.C.M.

---

[3] Before us now, the Government acknowledges that concession regarding an R.C.M. 706 inquiry into Appellant's post-trial mental capacity but seems to argue that the CCA did not abuse its discretion by concluding to the contrary. Also, it continues to oppose any inquiry into Appellant's mental status at the time of the trial or offense.

706 inquiry into Appellant's mental capacity on appeal should be ordered.

## IV. Judgment

The decision of the United States Army Court of Criminal Appeals is set aside. The record of trial is returned to the Judge Advocate General of the Army for remand to that court for proceedings in accordance with R.C.M. 1203(c)(5). That court shall order an R.C.M. 706 inquiry. If there are further proceedings, Articles 66 and 67, UCMJ, 10 U.S.C. §§ 866, 867 (2018), respectively, shall apply.

Judge MAGGS, with whom Judge HARDY joins, dissenting.

Congress has decreed that "[t]he Court of Appeals for the Armed Forces shall take action only with respect to matters of law." Article 67(c)(4), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 867(c)(4) (2018). One consequence of this limitation is that this Court has no authority to question the Government's prosecutorial priorities. Similarly, unless defense counsel's performance falls below the standard described in *Strickland v. Washington*, 466 U.S. 668 (1984), we have no reason to second-guess defense counsel's strategy and tactics. Perhaps these consequences are for the best because judges of this Court know only what is in the record, and litigation choices often depend on circumstances that are not evident to us.

We previously remanded this case to the United States Army Court of Criminal Appeals (ACCA) to give "appellate defense counsel the opportunity to make a showing of nexus between Appellant's significant and documented mental health issues and his capacity to participate in appellate proceedings." *United States v. Navarette*, 79 M.J. 123, 127 (C.A.A.F. 2019). On remand, the ACCA concluded that appellate defense counsel had not made this showing and consequently denied Appellant's request for a post-trial sanity hearing under Rule for Courts-Martial (R.C.M.) 1203(c)(5) (2016). *United States v. Navarette*, No. ARMY 20160786, 2020 CCA LEXIS 31, at *11–12, 2020 WL 489355, *4–5 (A. Ct. Crim. App. Jan. 29, 2020). The sole question of law in this case is whether the ACCA abused its discretion in making this decision. I conclude that it did not.

As I explain below, appellate defense counsel presented nothing to the ACCA that could establish the required nexus between his mental health and his capacity to participate in appellate proceedings until after the ACCA had rendered its decision in this case. Only then did a former appellate defense counsel prepare a sworn statement specifically alleging representation difficulties linked to Appellant's condition. The record does not reveal why this former appellate defense counsel chose not to provide this statement earlier. But I cannot agree that the ACCA abused its discretion based on the

documents before the court when it issued its opinion. I therefore respectfully dissent.

## I. Discussion

### A. This Court's Interpretation of R.C.M. 1203(c)(5) and the ACCA's Decision on Remand

R.C.M. 1203(c)(5) addresses concerns about the competency of the accused during appellate proceedings. This rule provides in relevant part:

> If a substantial question is raised as to the requisite mental capacity of the accused, the appellate authority may direct that the record be forwarded to an appropriate authority for an examination of the accused in accordance with R.C.M. 706, but the examination may be limited to determining the accused's present capacity to understand and cooperate in the appellate proceedings.

R.C.M. 1203(c)(5). In our previous decision in this case, we interpreted this rule to require a nexus between an appellant's mental health and his or her competence. *Navarette*, 79 M.J. at 126. We remanded the case to the ACCA so that it could determine whether such a nexus exists. *Id.* at 127.

On remand, the ACCA determined that Appellant had failed to make the requisite showing. The ACCA explained:

> Appellant has had multiple opportunities to provide a nexus between his bipolar diagnosis and his mental capacity—both before this court and our superior court—and has still failed to articulate how his mental health diagnoses prevent him from being able to understand or participate in his appellate proceedings.

*Navarette*, 2020 CCA LEXIS 31, at *14, 2020 WL 489355, at *5. Appellant appeals this decision to this Court.

### B. Whether the ACCA Abused Its Discretion

Appellate defense counsel in this appeal argue that the ACCA abused its discretion in denying him a hearing under R.C.M. 1203(c)(5). A court abuses its discretion if (1) its decision rests on findings of fact that are clearly erroneous, (2) an erroneous view of the law influenced the decision, or (3) the decision "is outside the range of choices reasonably arising from the applicable facts and the law." *United States v. Finch*,

79 M.J. 389, 394 (C.A.A.F. 2020) (quoting *United States v. Frost*, 79 M.J. 104, 109 (C.A.A.F. 2019)). Here, appellate defense counsel asserts that the ACCA's statement that he failed to establish a nexus between his mental health condition and his competency to assist on appeal is "simply wrong."

In briefs submitted to this Court, appellate defense counsel cite considerable evidence that Appellant has serious mental health concerns. But appellate defense counsel's contention that a nexus exists between Appellant's competency and his ability to assist in his representation on appeal ultimately rests on a sworn statement by one of his former appellate defense counsel—a statement that appellate defense counsel cite sixteen times in their opening brief. In this sworn statement, the former appellate defense counsel avers:

> At present, I have substantial questions about the accuracy of SPC Navarette's recollections and his ability to identify and communicate all relevant information in order for me to effectively represent him on appeal. Moreover, I have no way of knowing what material information SPC Navarette's mental illness may have prevented him from disclosing. In short, I had, and continue to have, substantial questions about SPC Navarette's competency to assist in appellate proceedings.

This sworn statement, in my view, would suffice to establish a nexus between Appellant's mental health problems and his competency to participate in the appellate proceedings before the ACCA and this Court because doubts about the accuracy of Appellant's recollections and his ability to identify and communicate relevant information relate to his ability to assist in his defense. But this sworn statement does not establish that the ACCA abused its discretion in denying Appellant's motion because the former appellate defense counsel prepared the sworn statement *only after* the ACCA had already announced its decision.

The relevant time line is as follows:

On August 1, 2019, this Court issued its opinion remanding the case to the ACCA. *Navarette*, 79 M.J. at 127. In that opinion, this Court specifically told the ACCA to determine whether a nexus existed between Appellant's mental condition and his capacity to represent himself on appeal. *Id.*

On October 21, 2019, in response to our decision, Appellant filed a renewed "Motion to Stay the Proceedings and Motion for R.C.M. 706 Inquiry" and a motion to attach several exhibits.[1] The motion and attached exhibits include various representations about Appellant's competency. These documents, however, contained nothing specifically describing a nexus between Appellant's mental condition and his ability to assist with his appeal.

On January 29, 2020, the ACCA denied Appellant's request for an R.C.M. 706 inquiry in the opinion that we are now reviewing. The ACCA's determination that Appellant "has still failed to articulate how his mental health diagnoses prevent him from being able to understand or participate in his appellate proceedings" was entirely accurate based on the information before the ACCA at the time of its decision. *Navarette*, 2020 CCA LEXIS 31, at *14, 2020 WL 489355, at *5.

On February 7, 2020, in response to the ACCA's ruling, appellate defense counsel filed a motion for reconsideration and en banc reconsideration. Only at this point did appellate defense counsel attach the sworn statement on which they now so heavily rely.

On February 19, 2020, the ACCA summarily denied the motion for reconsideration.

This time line shows that the ACCA was not "simply wrong" in stating in its opinion that appellate defense counsel had failed to establish a nexus between his mental health condition and his competency to assist on appeal. The ACCA could not have considered a sworn statement that was not before it at the time of its decision. *United States v. Sessions*, 10 C.M.A. 383, 387, 27 C.M.R. 457, 461 (1959) (holding that when a "ruling is reviewable only for abuse of discretion" the "discretion is to be exercised in the light of the evidence before [the decision-maker] at the time he makes his ruling"). The

---

[1] Appellant attached his medical records dated May 2019 from an April 2019 hospitalization and a sworn statement from the forensic psychologist, which outlined the general impact of bipolar disorder. Appellant also attached a CV of another forensic psychologist as a recommended member of a potential R.C.M. 706 board.

ACCA therefore did not abuse its discretion in denying a hearing under R.C.M. 1203(c)(5).

## C. Possible Counterarguments

Appellate defense counsel make a counterargument in a letter submitted to the Court after oral argument. In the letter, appellate defense counsel concede that the sworn statement on which they so heavily relied was not before the ACCA when the ACCA rendered its decision. But appellate defense counsel argue that the sworn statement was similar to representations appearing in Appellant's October 21, 2019, motion to the ACCA. I agree that much of the content of the sworn statement is similar to representations in the motion. But that is not enough to render the ACCA's decision an abuse of discretion because *only the sworn statement* specifically establishes a nexus between Appellant's mental condition and his ability to assist with his appeal.

Another possible counterargument (not expressly made by appellate defense counsel but perhaps implied by their appeal) is that the ACCA abused its discretion by not reconsidering its decision after the former defense counsel submitted the sworn statement. I find no support for this counterargument in the ACCA's Rules of Appellate Procedure. These rules provide that "[o]rdinarily, reconsideration will not be granted without a showing" of one or more listed circumstances. A.C.C.A. R. 31.2(b). None of these circumstances appears to be present here.

One of the listed circumstances is that a "factual matter was overlooked." A.C.C.A. R. 31.2(b)(1). But in this case, the ACCA did not "overlook" the representations in the sworn statement when it rendered its decision. It could not overlook a sworn statement that the former appellate defense counsel had not yet prepared.

Another listed circumstance for granting reconsideration is that "[n]ew information is received that raises a substantial issue as to the mental responsibility of the accused at the time of the offense or the accused's mental capacity to stand trial." A.C.C.A. R. 31.2(b)(4). This circumstance does not expressly extend to receipt of new information about an appellant's mental capacity to assist on appeal. But even if it did, the ACCA could conclude, without abusing its discretion, that the

sworn statement at issue here did not contain "new infor-
mation."

Nothing in the sworn statement indicates that a nexus be-
tween Appellant's condition and his ability to assist with his
appeal arose only after October 21, 2019, when appellate de-
fense counsel filed the motion for a mental examination and
the supporting exhibits. Appellate defense counsel also did
not characterize the sworn statement as providing new infor-
mation in their motion for consideration. On the contrary, ap-
pellate defense counsel asserted the opposite in the motion for
reconsideration, saying:

> Appellate defense counsel, having never met [Spe-
> cialist (SPC)] Navarette in person or had the oppor-
> tunity to meet with those close to him, has had to
> form his impressions of SPC Navarette's competency
> wholly from the content of conversations with SPC
> Navarette and the affidavits and records already
> submitted to this court.

Accordingly, I see no grounds for concluding that the ACCA
abused its discretion in denying the motion for
reconsideration.[2]

Consistent with my view that the ACCA did not abuse its
discretion in denying the motion for reconsideration, the
Court today properly declines to rely on the former appellate
defense counsel's sworn statement. *United States v.
Navarette*, __ M.J. __, __ n.2 (6 n.2) (C.A.A.F. 2021). Instead,
as the key support for its decision, the Court relies on a state-
ment in the motion for a hearing under R.C.M. 1203(c)(5) that
Appellant filed upon remand. *Id.* at __ (9). In the motion, ap-
pellate defense counsel asserted:

> In light of [Appellant's] most recent diagnosis with
> bipolar disorder, counsel himself has a substantial
> question not just about appellant's present compe-
> tency, but about his competency during essential pe-
> riods of his appellate representation before this

---

[2] This Court similarly denies motions for reconsideration when
the losing party primarily seeks reconsideration based on infor-
mation that the losing party could have presented at an earlier time
but did not. *See, e.g., United States v. Bergdahl*, 80 M.J. 362
(C.A.A.F. 2020) (order denying petition for reconsideration and mo-
tion to supplement the record).

> Court. As such, to the extent this Court finds it rele-
> vant, appellate defense counsel had, and continues
> to have, substantial questions about appellant's abil-
> ity to assist in his own defense.

The Court's reliance on this statement is misplaced because
when this case was previously before this Court, we held that
the ACCA did not abuse its discretion in concluding that
*nearly identical assertions* were insufficient to establish a
nexus between Appellant's mental condition and his compe-
tency to assist on appeal. *See Navarette*, 79 M.J. at 126.

During his initial appeal to the ACCA, in moving for a stay
of the proceedings and a hearing under R.C.M. 1203(c)(5), ap-
pellate defense counsel wrote: "This new diagnosis [of bipolar
disorder] raises substantial questions as to appellant's ability
to have appreciated the wrongfulness of his action at the time
of the offenses." Appellate defense counsel then listed other
questions also raised by the diagnosis, including: "Is appel-
lant currently suffering from a mental disease or defect ren-
dering him unable to understand the nature of the appellate
proceedings or cooperate intelligently in his appeal?"

The ACCA denied Appellant's motion on grounds that "ap-
pellant's counsel has not asserted any actual claim that ap-
pellant 'is unable to understand the nature of the proceedings
. . . or cooperate intelligently in the defense of the case.'"
*United States v. Navarette*, No. ARMY 20160786, 2018 CCA
LEXIS 446 at 5, 2018 WL 4510119, at *2 (A. Ct. Crim. App.
Sept. 17, 2018) (alteration in original) (quoting R.C.M.
909(a)). We affirmed, holding: "[A]n appellant must, at a min-
imum, articulate how his mental condition prevents him from
being able to understand or participate in the proceedings."
*Navarette*, 79 M.J. at 126. We further held that a diagnosis of
a mental disorder *by itself* is insufficient to raise a substantial
question about a client's competency to assist on appeal. In-
stead, we explained, "[a]ppellate defense counsel might raise
a substantial question by presenting documents or averring
facts showing a nexus between Appellant's mental illness and
an inability to participate in the proceedings." *Id.* at 126 n.5.

Accordingly, just as appellate defense counsel failed to
establish the requisite nexus in his initial motion for a
hearing under R.C.M. 1203(c)(5), he also failed to establish a
substantial question when he used nearly identical language

in his motion upon remand. Perhaps this case could have been litigated differently. Perhaps appellate defense counsel could have filed his sworn statement at an earlier time. But the bottom line is that when the ACCA made its decision, the ACCA was correct in stating that "Appellant . . . had multiple opportunities to provide a nexus between his bipolar diagnosis and his mental capacity . . . and . . . still failed to articulate how his mental health diagnoses prevent him from being able to understand or participate in his appellate proceedings." *Navarette*, 2020 CCA LEXIS 31, at \*14, 2020 WL 489355, at \*5.

## II. Conclusion

The choices that counsel representing the parties in this case have made are not "matters of law" before this Court. The only matter of law is the question of whether the ACCA abused its discretion in denying a hearing pursuant to R.C.M. 1203(c)(5) as this Court has interpreted that rule. I would answer this question in the negative because when the ACCA made its decision, appellate defense counsel had not made a showing specifically establishing a nexus between Appellant's mental health condition and his ability to assist with his appeal. I therefore would affirm the decision of the ACCA.